# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

COREY LEACH, ANTHONY JACOB, PRIAMO
FERMIN, NEFTALI PELLOT, and GARY
PHIFER, individually and
on behalf of all others similarly situated,

                        Plaintiffs,

          - against -

NBC UNIVERSAL MEDIA LLC; SONY
PICTURES TELEVISION, INC.; WOODRIDGE
PRODUCTIONS, INC.; BONANZA
PRODUCTIONS INC.; WARNER BROS.
TELEVISION, A DIVISION OF WB STUDIO
ENTERPRISES, INC.; MADWOMAN IN THE
ATTIC, INC.; TVM PRODUCTION, INC.; and
PROSPECT PARK NETWORKS, LLC,
                   Defendants.

---

COREY LEACH, ANTHONY JACOB, and
ROBERT TRACEY, individually and on behalf
of all others similarly situated,

                        Plaintiffs,

         -against-

FOX ENTERTAINMENT GROUP, INC.;
WARNER BROS. ENTERTAINMENT INC.;
BONANZA PRODUCTIONS, INC.;
OUTERBANKS ENTERTAINMENT;
PRIMROSE HILL PRODUCTIONS; DC
COMICS INC.; and CAST & CREW
PAYROLL, LLC,

                   Defendants.

---

Civil Action Nos: 1:15-cv-07208-AT;
1:16-cv-01411-RJS; 1:15-cv-07941-
AT; 1:15-cv-07206 - LGS

**JOINT STIPULATION OF
SETTLEMENT AND RELEASE**



PRIAMO FERMIN and CHRISTIAN PELLOT,
individually and on behalf of all others similarly
situated,

Plaintiffs,

- against -

BROKEN RECORDS, LLC; HALF A
YOGURT, LLC; and JOHN DOES 1-20,

Defendants.

GARNETT MORGAN, JONATHAN
TUCKER, CAROL FORREST, FERDIE
HEADLAM, and ALI MUHAMMED,
individually and on behalf of all others similarly
situated,

Plaintiffs,

- against --

WARNER BROS. PICTURES, A DIVISION
OF WB STUDIO ENTERPRISES INC.;
CHIME PRODUCTIONS, LLC; NEW LINE
PRODUCTIONS, INC.; and JOHN DOES 1-20,

Defendants.

This Joint Stipulation of Settlement and Release (the "Agreement") is entered into by and between the Named Plaintiffs individually and on behalf of the class(es) of individuals that they seek to represent (all as defined below) and the Defendants (as defined below) related to productions involving HBO and Warner Bros. for which Parking Production Assistants ("PPAs") provided services.

## RECITALS

WHEREAS, Corey Leach, Anthony Jacob, Priamo Fermin, Neftali Pellot and Gary Phifer filed an action in the United States District Court for the Southern District of New York, Civil Action No. 15-cv-07206 (LGS), captioned *Leach et al. v. NBC Universal Media, LLC et al.* (the "NBC Action"), in which they claimed that Defendants Warner Bros. Television, a division of WB Studio Enterprises Inc.; Bonanza Productions Inc.; and other entities owed them and a

2



purported class of similarly situated PPAs unpaid overtime wages pursuant to, *inter alia*, the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and Article 19 of the New York Labor Law ("NYLL"), §§ 195, 650 *et seq.*; and

WHEREAS, Corey Leach, Anthony Jacob, and Robert Tracey filed an action in the United States District Court for the Southern District of New York, Civil Action No. 15-cv-07208 (AT), captioned *Leach et al. v. Fox Entertainment Group, Inc. et al.* (the "Fox Action"), in which they claimed that Defendants Warner Bros. Entertainment Inc., Bonanza Productions Inc., Warner Bros. Television, a division of WB Studio Enterprises Inc., and other entities owed them and a purported class of similarly situated PPAs unpaid overtime wages pursuant to, *inter alia*, the FLSA and NYLL; and

WHEREAS, Plaintiffs Priamo Fermin and Christian Pellot filed an action in the United States District Court for the Southern District of New York, Civil Action No. 15-cv-07941 (AT), captioned *Fermin et al. v. Home Box Office, Inc. et al.,* which was subsequently re-captioned as *Fermin et al. v. Broken Records, LLC and Half A Yogurt, LLC et al.* after the dismissal of Home Box Office, Inc. (the "HBO Action"), in which they claimed that Defendants Broken Records, LLC and Half A Yogurt, LLC owed them and a purported class of similarly situated PPAs unpaid overtime wages pursuant to, *inter alia*, the FLSA and NYLL; and

WHEREAS, Garnett Morgan, Jonathan Tucker, Carol Forrest, Ferdie Headlam, and Ali Muhammed (together with Corey Leach, Anthony Jacob, Neftali Pellot, Gary Phifer, Robert Tracey, Priamo Fermin, and Christian Pellot, the "Named Plaintiffs") filed an action in the United States District Court for the Southern District of New York, Civil Action No. 16-cv-1411 (RJS), captioned *Morgan et al. v. Warner Bros. Pictures, a Division of WB Studio Enterprises Inc. et al.* (the "Warner Bros. Pictures Action") in which they claimed that Defendants Warner Bros. Pictures, a division of WB Studio Enterprises Inc.; Chime Productions, LLC; and New Line Productions, Inc. owed them and a purported class of similarly situated PPAs unpaid overtime wages pursuant to, *inter alia*, the FLSA and NYLL; and

WHEREAS, Defendants deny all of the allegations and claims made by the Named Plaintiffs in all of the foregoing cases (the "Litigation") and deny that they are liable or owe damages to anyone with respect to the alleged facts or causes of action which were or which could have been asserted in the Litigation or which were or could have been asserted in any other action involving similar claims; and

WHEREAS, on July 27, 2016, the Parties participated in a mediation conducted by experienced mediator Mark S. Rudy (the "Mediator" or "Mediator Rudy"), and subsequently reached an accord resulting in this Agreement; and

WHEREAS, without admitting or conceding any liability or damages whatsoever, Defendants have agreed to settle the Litigation and all Released Claims (as defined below) on the terms and conditions set forth in this Agreement, to avoid the burden, expense, and uncertainty of continued litigation; and

WHEREAS, the purpose of this Agreement is to memorialize the terms of the Settlement and to settle fully and finally all Released Claims (as hereinafter defined) between the Named



Plaintiffs, all Class Members who do not opt-out of the Settlement, all Participating Claimants (as defined below), and all Defendants, including all wage and hour claims which were or which could have been asserted in the Litigation or in any other action which could have been filed up to the date of this Agreement as against Defendants; and

WHEREAS, Plaintiffs' Counsel (as defined below) have conducted extensive formal and informal discovery, including but not limited to interviewing Named Plaintiffs and over two hundred (200) putative Class Members and reviewing and analyzing thousands of pages of documents provided by Class Members and Defendants; and

WHEREAS, based upon their analysis and evaluation of a number of factors, and recognizing the risks of litigation, Plaintiffs' Counsel and the Named Plaintiffs are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Plaintiffs, Opt-In Plaintiffs and all members of the Settlement Class in light of all known facts and circumstances including the risk of delay, defenses asserted by Defendants, and numerous potential certification and appellate issues;

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties hereto agree to a full and complete settlement of the Litigation and all other Released Claims on the following terms and conditions:

1. **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1 **Agreement.** "Agreement" and "Settlement Agreement" mean this Joint Stipulation of Settlement and Release and all exhibits.

1.2 **Alternative Minimum Settlement Payment.** "Alternative Minimum Settlement Payment" means the minimum Settlement Payment of Fifty Dollars ($50.00) for a Participating Claimant, if any, whose Settlement Payment Allocation pursuant to this Agreement falls below $50.00.

1.3 **Claim Form.** "Claim Form" and "Settlement Claim Form" mean the form attached hereto as Exhibit B, or as otherwise approved by the Court, that will be attached as Form 1 to the Notice, and that each Class Member must submit, along with a copy of an Identification Document, in order to receive a Settlement Check. Claim Forms will be deemed filed with the Court upon receipt by the Claims Administrator and need not be filed with the Court.

1.4 **Claim Form Deadline.** "Claim Form Deadline" and "Bar Date" mean the date sixty (60) days after Notice is mailed and/or emailed to Class Members, by which a Class Member is required to return the Claim Form and Identification Document to participate in this Settlement and Litigation. If the Claims Administrator re-mails the Notice to any Class Member pursuant to this Agreement because the initial mailing was returned as undeliverable, the Claim Form Deadline for such Class Member shall be sixty (60) days after the re-mailing or 30 days from the second Notice mailed if it also came back as



undeliverable, but in no event will the deadline be later than 15 days after the Claim Form Deadline. To be timely a Claim Form must be post-marked by the applicable Claim Form Deadline. Defendants may waive expiration of the deadline and accept a tardy Claim Form in its/their sole discretion. If a late Claim Form is accepted in this manner, such Claim Form shall be deemed timely for all purposes.

1.5     **Class Counsel.** "Class Counsel" and "Plaintiffs' Counsel" mean James A. Vagnini, Robert J. Valli, Jr., and Sara Wyn Kane of the law firm of Valli Kane & Vagnini LLP.

1.6     **"Class Counsel's Fees, Costs and Expenses"** means the total amount of Class Counsel's attorneys' fees, costs, and expenses approved by the Court following an application by Class Counsel. Class Counsel's Fees, Costs and Expenses will not exceed one third (1/3) of the Gross Settlement Amount. Class Counsel's Fees, Costs and Expenses shall be included in the Gross Settlement Amount.

1.7     **Class List.** Means the following list of data for all Class Members to the extent contained in the payroll records of Defendants and/or third party payroll companies involved in the compensation process for PPAs: name, last known addresses, email address, cell, home and business phone number, date of birth and social security number.

1.8     **Class Members.** "Class Members" and "Settlement Class Members" mean the individuals who held the position of "Parking Production Assistant" or "PPA" and/or provided any services as a PPA during the statute of limitations periods applicable to the Complaints on (a) any production produced, co-produced, or financed by Home Box Office, Inc. or any of its subsidiaries, including, but not limited to any HBO Original Programming production, and/or (b) any production produced, co-produced, distributed, broadcast, or financed by Warner Bros. Entertainment Inc. or one of its subsidiaries or Affiliates (as defined below) and who are listed on the Class List provided by Defendants to the Claims Administrator.

1.9     **Complaints.** "Complaints" mean the following Complaints filed by the Named Plaintiffs:

(a)     Second Amended Class And Collective Action Complaint dated November 30, 2015 that was filed by Named Plaintiffs Leach, Jacob, and Tracey against Warner Bros. Entertainment Inc., Bonanza Productions Inc., and other entities in the Fox Action (the "Fox Complaint");

(b)     Third Amended Collective And Class Action Complaint dated February 9, 2016 that was filed by Named Plaintiffs Leach, Jacob, Fermin, Pellot, and Phifer against Bonanza Productions Inc., Warner Bros. Television, a division of WB Studio Enterprises Inc., and other entities in the NBC Action (the "NBC Complaint");

(c)     First Amended Collective And Class Action Complaint dated February 10, 2016 that was filed by Named Plaintiffs Fermin and Pellot against Broken Records, LLC and Half A Yogurt, LLC in the HBO Action (the "HBO Complaint"); and



(d)    Collective And Class Action Complaint dated June 16, 2016 that was filed by Named Plaintiffs Morgan, Tucker, Forrest, Headlam, and Muhammed against Warner Bros. Pictures, a division of WB Studio Enterprises Inc., Chime Productions, LLC, and New Line Productions, Inc. in the Warner Bros. Pictures Action (the "Warner Bros. Pictures Complaint") (together with the HBO, NBC, and Fox Complaints, the "Complaints").

1.10    **Court.** "Court" means the United States District Court for the Southern District of New York.

1.11    **Days.** "Days" means calendar days.

1.12    **Defendants.**    For purposes of this Agreement, "Defendants" means (a) Bonanza Productions Inc.; Warner Bros. Entertainment Inc.; Warner Bros. Television, a division of WB Studio Enterprises Inc.; Warner Bros. Pictures, a division of WB Studio Enterprises Inc.; Chime Productions, LLC; New Line Productions, Inc.; Kiki Tree Pictures, Inc. (the "Warner Bros. Defendants"); and their respective successors, assigns, subsidiaries, parent companies and Affiliates (as defined below); (b) Broken Records, LLC; Half A Yogurt, LLC; Home Box Office, Inc. (the "HBO Defendants"); and their respective successors, assigns, subsidiaries, and parent companies, as well as any entity financed by the HBO Defendants which produced, co-produced or financed any HBO Original Programming production; and (c) any other individual or entity that produced any production upon which a Class Member provided any services which generated any claims that are covered and released by this Agreement. For purposes of this Definition the term "Affiliates" means with respect to a person, corporation, or other entity, any other person, corporation, or entity that directly or indirectly Controls, is Controlled by, or is under common Control with such corporation or entity. "Control" means the possession, directly or indirectly, of the power to direct or cause the direction of management or policies of an entity through direct or indirect ownership of (or the contractual right to direct the voting of) at least fifty percent (50%) of the voting interest in the entity in question.)

1.13    **Defendants' Counsel.** "Defendants' Counsel" means the law firm of Morgan, Lewis & Bockius LLP.

1.14    **Effective Date.** Provided no appeal is timely filed, the "Effective Date" means the date thirty (30) days after the Court has entered a Final Order. If such an appeal is timely filed, the date of the latest of the following, if applicable, becomes the Effective Date: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review or for certiorari with respect to any appellate decision affirming the Final Order has expired; and (4) if a petition for review or for certiorari of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form substantially identical to the form of the Final Order entered by the Court.

6



1.15 **Employer Payroll Taxes.** "Employer Payroll Taxes" means all taxes and withholdings required to be made arising out of or based upon the payment of wages in this Litigation, including FICA, FUTA, and SUTA obligations. As discussed below, there are employee and employer portions of these taxes.

1.16 **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Motion for Final Approval.

1.17 **Final Approval Order.** "Final Approval Order" means the order entered by the Court after the Fairness Hearing, in a Form to be agreed on by the Parties. The Final Approval Order will ask the Court to do the following: (1) adjudge the terms of this Settlement Agreement to be fair, reasonable and adequate, and in the best interest of the Plaintiffs, Opt-In Plaintiffs and members of the Settlement Class and thereby approving the terms and conditions of this Agreement; (2) appoint the Named Plaintiffs as Plaintiffs who together with Class Counsel, shall be authorized to act on behalf of all members of the Settlement Class with respect to the Litigation and the Settlement Agreement; (3) appoint Plaintiffs' Counsel as Class Counsel for the Settlement Class pursuant to Section 216(b) of the FLSA; (4) authorize distribution of the Settlement Checks; (5) approve Class Counsel's application for an award of Class Counsel's Fees, Costs and Expenses; (6) approve Service Payments to Plaintiffs; and (7) dismiss the Litigation with prejudice and enter Judgment of Dismissal pursuant to this Agreement and in accordance with Fed. R. Civ. P. 58. A failure of the Court to order one or more of these points (except for point 7) will not automatically render this Agreement unenforceable or null and void except as set forth in this Agreement. If the Court fails to order any of the above, the Parties agree to meet and confer in an effort to resolve the matter in accordance with the terms of this Agreement. A failure to dismiss the Litigation with prejudice will render the Agreement null and void.

1.18 **Gross Settlement Amount.** "Gross Settlement Amount" means a potential aggregate sum not to exceed Eight Million Dollars ($8,000,000.00), which Defendants have agreed to pay to settle the Litigation as set forth in this Agreement, subject, *inter alia*, to Defendants' right to terminate this Agreement as set forth below. The Gross Settlement Amount shall cover all Participating Claimants' payments; the employee share of Employer Payroll Taxes; the Reserve Fund; the Class Counsel's Fees, Costs and Expenses; and the Service Awards, all of which together shall not exceed the Gross Settlement Amount. The Settlement Claims Administrator's fees and costs and the Employer's share of Employer Payroll Taxes will be paid by Defendants on top of the Gross Settlement Amount.

1.19 **Identification Document.** Identification Document means any identification document issued by any federal, state or local government, and not limited to but which may include a passport or driver's license. If a Participating Claimant does not have any such Identification Document, or if there is any question about whether something is an acceptable form of identification, the Claims Administrator shall notify the Parties of the specific type of identification that has been submitted, and each Party may submit a letter (limited to two pages) to the Claims Administrator for consideration. The Claims Administrator shall decide whether the form of identification provided is sufficient and

7



that decision shall be final. Defendants may collectively waive the Identification Document requirement or any other deficiencies in the Claim Form in their sole discretion. The Notice will indicate that the Identification Document may be submitted via text, email, fax or mail to the Claims Administrator on or before the Claim Form Deadline.

1.20 **Last Known Address.** "Last Known Address" means the most recently recorded physical mailing address and/or electronic mail address for a Class Member as such information is currently contained in the payroll records of Defendants and/or third party payroll companies involved in the compensation process for PPAs.

1.21 **Litigation, Lawsuit or Action.** "Litigation," "Lawsuit" and "Action," individually and together mean:

(a) The Lawsuit filed in the United States District Court for the Southern District of New York, Civil Action No. 15-cv-07206 (LGS), captioned *Leach et al. v. NBC Universal Media, LLC et al.* (also known as the "NBC Action"); and

(b) The Lawsuit filed in the United States District Court for the Southern District of New York, Civil Action No. 15-cv-07208 (AT), captioned *Leach et al. v. Fox Entertainment Group, Inc. et al.* (also known as the "Fox Action"); and

(c) The Lawsuit filed in the United States District Court for the Southern District of New York, Civil Action No. 15-cv-07941 (AT), captioned *Fermin et al. v. Broken Records, LLC and Half A Yogurt, LLC et al.* (also known as the "HBO Action"); and

(d) The Lawsuit filed in the United States District Court for the Southern District of New York, Civil Action No. 16-cv-1411 (RJS), captioned *Morgan et al. v. Warner Bros. Pictures, a Division of WB Studio Enterprises Inc. et al.* (the "Warner Bros. Pictures Action").

1.22 **Named Plaintiffs.** "Named Plaintiffs" or "Plaintiffs" shall mean Neftali Pellot, Gary Phifer, Corey Leach, Anthony Jacob, Robert Tracey, Priamo Fermin, Christian Pellot, Garnett Morgan, Jonathan Tucker, Carol Forrest, Ferdie Headlam, and Ali Muhammed.

1.23 **Net Settlement Fund.** "Net Settlement Fund" means the remainder of the Gross Settlement Amount after deductions for: (1) Class Counsel's Fees, Costs and Expenses; (2) Court-approved Service Awards to the Named Plaintiffs as specified herein; and (3) a $25,000.00 Reserve Fund as defined and described herein.

1.24 **Notice.** "Notice" and "Notices" mean the Court-approved Notice of Proposed Settlement of Class and Collective Action Lawsuit and Fairness Hearing, in the form attached hereto as Exhibit A.

1.25 **Objector.** "Objector" means an individual who files an objection to this Settlement and/or this Agreement, and does not include any individual who opts-out of this Agreement.

8



1.26  **Opt-out Statement.** "Opt-out Statement" is a written, signed statement that an individual Class Member has decided to opt-out and not be included in this Settlement.

1.27  **Participating Claimant or Participating Claimants.** "Participating Claimant" and "Participating Claimants" mean: (a) for purposes of the release of any FLSA claims, each Class Member who properly and timely submits a Claim Form and a copy of an Identification Document by the Claim Form Deadline and/or who cashes a Settlement Check; and (b) for purposes of the release of any and all state law claims, each Class Member who does not opt out of the Settlement in accordance with the terms of this Agreement. For the avoidance of any doubt, all Class Members who do not opt out are Participating Claimants and bound by a release of claims as set forth in this Agreement.

1.28  **Parties.** "Parties," as set forth in the Introduction, shall mean, collectively, Named Plaintiffs and Defendants.

1.29  **"Postmark"** means the date stamped or otherwise indicated on an envelope by the United States Postal Service or other mail carrier. For any deadline under this Agreement that is based on a Postmark, in the event that there is no postmark date of the document being mailed by the Class Member, it shall be presumed the document was mailed three (3) Days prior to the date received by the Claims Administrator, excluding any Sunday or other day for which no postal service was provided.

1.30  **PPA or PPAs.** "PPA" and "PPAs" mean any Class Member entitled to participate in the Settlement, which includes all individuals engaged by any Defendant during the time from the start of the statute of limitations periods applicable to each Complaint listed in Section 1.7 through October 1, 2016, whose title or position with Defendants, as reflected in Defendants' records, or in any publicly available source agreed upon by the Parties, is or included the term PPA, and who is on the Class List provided by Defendants to the Claims Administrator.

1.31  **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court in substantially the form attached as Exhibit 2. *to the Preliminary Approval Motion* Exhibit 2 will ask the Court to do the following: (1) assert jurisdiction over the implementation and administration of this Settlement Agreement; (2) provisionally adjudge the terms of this Settlement Agreement to be fair, reasonable and adequate, and in the best interest of the Plaintiffs, Opt-In Plaintiffs and members of the Settlement Class and direct consummation of its terms and provisions; (3) appoint the Named Plaintiffs as Class Representatives who, together with Class Counsel, shall be authorized to act on behalf of all members of the Settlement Class with respect to the Litigation and the Settlement Agreement; (4) approve as to form and content the Settlement Notice and Claim Form and authorize the mailing of said Notice and Claim Form to all members of the Settlement Class; (5) appoint Plaintiffs' Counsel as Class Counsel for the Settlement Class pursuant to Fed. R. Civ. Proc. 23 and Section 216(b) of the FLSA; (6) appoint a third-party claims administrator who is acceptable to the Parties as the Claims Administrator as defined herein; (7) set a sixty (60) calendar day deadline for the execution and return of fully completed Claim Forms; (8) provisionally approve Class Counsel's application for an award of Class Counsel's Fees, Costs and Expenses and Service Payments to Plaintiffs;



9



(9) specify the deadlines to object or opt-out of the Settlement; and (10) set the matter down for a Final Approval Hearing. A failure of the Court to order one or more of these points will not automatically render this Agreement unenforceable or null and void except as set forth in this Agreement. If the Court fails to order any of the above, the Parties agree to meet and confer in an effort to resolve the matter in accordance with the terms of this Agreement.

1.32 **Qualified Settlement Fund or QSF.** "Qualified Settlement Fund" or "QSF" means the account established by the Claims Administrator and funded by the Defendants for the purpose of holding the amounts to fund the Settlement as well as funds sufficient to enable the Claims Administrator to pay the Employer's Share of the Employer Payroll Taxes, and the Settlement Claims Administrator's fees and costs including those associated with Notice and distributing all approved amounts to the proper individuals and parties. The QSF will be controlled by the Claims Administrator subject to the terms of this Agreement and the Court's orders regarding Preliminary Approval and Final Approval. Interest, if any, earned on the QSF will become part of the Gross Settlement Amount.

1.33 **Released Federal Law Claims.** "Released Federal Law Claims" shall collectively mean any and all federal law claims, obligations, demands, actions, rights, causes of action, and liabilities against Releasees, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, including unknown claims, that accrue or accrued up through October 1, 2016, for any type of relief under the Fair Labor Standards Act ("FLSA") that arose from or relate in any way to any PPA or any other relationship that any Class Member had with any Defendant or Releasee, including without limitation FLSA claims for wages, overtime, reimbursement of expenses or allowances, damages, unpaid costs, penalties (including late payment penalties), premium pay, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief, and any related or derivative claims, including but not limited to related or derivative claims arising under the Employment Retirement Income Security Act ("ERISA") or any common law breach of contract theory.

1.34 **Released State Law Claims.** "Released State Law Claims" shall collectively mean any and all New York State, New York City and other state and local claims, obligations, demands, actions, rights, causes of action and liabilities against Releasees, of whatever kind and nature, character and description, whether known or unknown, and whether anticipated or unanticipated, including unknown claims, that were or which could have been asserted in the Litigation against any Defendant or Releasee by any Class Member, and that accrued or accrue up through October 1, 2016 that relate to wages, hours, working conditions and compensation claims. This Release includes a release of any claims for any type of relief under New York State law, New York City law and other state and local wage, hours, working conditions and compensation laws that arose from or are in any way related to any PPA or any other relationship that any Class Member had with any Defendant or Releasee, including without limitation claims under any legal theory for failure to pay minimum wage, failure to pay overtime, failure to pay for all hours worked, failure to provide meal and rest periods, failure to timely pay final wages,

10



failure to reimburse for business expenses, failure to provide an expense allowance, and/or failure to furnish accurate wage statements, wage notices or other notices, and any and all claims for recovery of compensation, overtime pay, minimum wage, premium pay, interest, and/or penalties, and any related or derivative claims, including but not limited to claims under the Employee Retirement Income Security Act ("ERISA") or any common law breach of contract, tort, unjust enrichment, conversion or other theory, other penalties, and punitive and liquidated damages claims, and/or violations of any other state or local statutory and common law relating to wages, hours, working conditions and compensation.

The New York state law claims that are released specifically include, without limitation: N.Y. Lab. Law § 160 et seq.; N.Y. Lab. Law § 190 et seq. (including, but not limited to, §§ 191, 193, 195, and 198); N.Y. Lab. Law §§ 215 and 218; New York Minimum Wage and Hour Law: N.Y. Lab. Law § 650 et seq.; 12 N.Y. Comp. Codes R. & Regs. Pt. 142-2.1 et seq. (including, but not limited to, §§ 142-2.2, 142-2.4, and 142-2.14).

1.35 **Releasees.** "Releasees" means Defendants and their Affiliates, as well as each of their respective present and former officers, partners, directors, employees, agents, attorneys, shareholders, insurers or reinsurers, employee retirement or benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), payroll or compensation service companies (including but not limited to Cast & Crew and Entertainment Partners), assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under or in concert with any of them, and any individual or entity that could be jointly liable with any of them, including but not limited to any individual or entity who exhibited, broadcast or otherwise showed or distributed any productions of the Defendants which are covered by this Agreement. Nothing herein is intended to release any claims against any third party that is not a Defendant or Releasee in this action on any production not covered by this Settlement.

1.36 **"Service Payment"** means the amount that may be approved by the Court for payment to the named Plaintiffs in recognition of their efforts on behalf of the Settlement Class in the Litigation, in an amount as set forth below, less applicable taxes and deductions. This amount is included in the Gross Settlement Amount

1.37 **Settlement.** "Settlement" means the proposed settlement, subject to the Court's approval, entered into by the Parties to resolve the Litigation on behalf of Named Plaintiffs, Class Members, Participating Claimants, Defendants, and Releasees as set forth in this document.

1.38 **Settlement Claims Administrator. The "Settlement Claims Administrator" and "Claims Administrator"** means the third-party claims administration firm mutually agreed upon by the Parties and appointed by the Court, which will perform all of the administrative duties assigned in this Agreement. The third-party claims administration firm designated to serve as the Claims Administrator is Kurtzman Carson Consultants LLC ("KCC").

11



1.39   **Settlement Check.** "Settlement Check," "Settlement Checks" and "Settlement Payment" mean the payments, through checks distributed by the Claims Administrator, issued to Participating Claimants for their share of the Net Settlement Fund calculated in accordance with this Agreement.

1.40   **Settlement Class.** "Settlement Class" and "Settlement Class Members" mean the group of Class Members eligible to participate in this Settlement.

1.41   **Updated Address.** "Updated Address" means a mailing address that was updated via a standard skip trace or an updated mailing address provided by the United States Postal Service, NCOA database, Class Counsel, or a Class Member.

2.     **<u>CONDITIONAL NATURE OF THIS AGREEMENT</u>**

2.1    This Agreement, including all associated exhibits and attachments, is made for the sole purpose of settling the Litigation and all other Released Claims on a class-wide basis. This Agreement and the Settlement it evidences are made in compromise of disputed claims. Because the Litigation was pled as a class action, and is being settled on a class basis, this Settlement must receive approval from the Court. Accordingly, the Parties enter into this Agreement and the associated Settlement on a conditional basis.

2.2    (a) Defendants will file a motion requesting that the Court treat the Settlement and this Agreement as confidential and to allow it and the Motion for Preliminary Approval (and any related documents) to be filed for *in camera* review only or under seal <u>until</u> the Agreement receives Preliminary Approval. Plaintiffs will consent to that application. In the event that the Court does not approve the Settlement in the form set forth in this Agreement, or in the event that the associated Judgment does not become a Final Judgment for any reason, this Agreement, except for those provisions relating to the interpretation and termination of the Settlement, the conditional nature and confidentiality of this Settlement, and non-admissibility and non-admission of wrongdoing or liability, shall be deemed null and void *ab initio*, it shall be of no force or effect whatsoever, shall not be referred to or utilized for any purpose whatsoever, and the negotiation, terms and execution of the Agreement shall remain confidential and subject to the rules of evidence barring admission of settlement materials.

(b) If the Settlement is approved by the Court, Defendants shall publicly file the Settlement Agreement and the Motion for Preliminary Approval (and any related documents) with a request that the Gross Settlement Amount remain confidential in the Settlement Agreement. Plaintiffs shall not submit a response to Defendants' application, unless requested by the Court, and the Parties will abide by the Court's decision on whether the amount is to remain confidential. Plaintiffs shall keep the Gross Settlement Amount confidential during the pendency of such request. The Agreement shall remain subject to the rules of evidence barring admission of settlement materials, and the negotiations and all drafts of the Agreement shall remain confidential and not be disclosed to any other individuals or entities. Nothing herein is intended to prevent the public filing of the Settlement Agreement in accordance with this paragraph or the disclosure of the Settlement Agreement in any form in which it is publicly filed by the Parties or the Court.

12



2.3    Defendants deny the allegations asserted in the Litigation, and specifically that this matter should proceed on a class or collective basis (other than for settlement purposes). Defendants have agreed to resolve the Litigation via this Agreement, but to the extent this Agreement is deemed void or the Effective Date does not occur, Defendants do not waive, but rather expressly reserve, all rights to challenge any and all claims and allegations asserted in the Litigation upon all procedural and substantive grounds, including without limitation the ability to challenge class and collective action treatment on any grounds, and to assert any and all other potential defenses or privileges.

2.4    The Named Plaintiffs and Plaintiffs' Counsel agree that Defendants retain and reserve all of the rights set forth in this Agreement, including in this Section 2. Specifically, the Named Plaintiffs agree that, if the Litigation is to proceed, they will not argue or present any argument, and hereby waive any argument that, based on the Settlement or this Agreement or any of the exhibits and attachments hereto, or any act performed or document executed pursuant to or in furtherance of the Settlement or this Agreement, Defendants should be barred from contesting class certification or collective action certification on any grounds, or from asserting any and all other potential defenses and privileges.

2.5    If the Litigation were to proceed, the Named Plaintiffs and Plaintiffs' Counsel expressly reserve the right to prosecute all the claims in the Complaints as well as the right to raise any additional timely claims as well as challenge any and all defenses and allegations asserted by Defendants in the Litigation itself.

## 3.    DEFENDANTS' DENIAL OF WRONGDOING OR LIABILITY

3.1    Defendants specifically and generally deny all of the claims asserted in the Litigation and all other Released Claims; deny all allegations and claims as to liability, damages, penalties, interest, fees and all other forms of relief; deny any and all wrongdoing of any kind whatsoever associated with any of the facts or claims alleged in the Litigation; and make no concessions or admissions of wrongdoing or liability of any kind whatsoever. Defendants maintain that PPAs have always been properly paid under all state and federal overtime laws, and that, for any purpose other than settlement, the Litigation is not suitable or appropriate for class or collective action treatment pursuant to 29 U.S.C. § 216(b), Article 9 of the New York Civil Practice Law and Rules ("CPLR"), or any similar rule in any other state, or any corresponding federal rules.

3.2    The Parties understand and agree that this Settlement represents a compromise of disputed claims, and have agreed to enter into this Agreement to avoid the risks, costs, and delays associated with further proceedings. Nothing contained in this Agreement, nor the fact of the Settlement or this Agreement itself, nor the exhibits thereto, nor any act performed or document executed pursuant to or in furtherance of the Settlement or this Agreement may be construed or be used as an admission or evidence of the validity of any claim or allegation, or of any act, omission, liability or wrongdoing on the part of Defendants in any action or proceeding of any kind whatsoever, except to enforce this Agreement.

13



3.3    Pursuant to the applicable rules of evidence, this Agreement, and the exhibits and attachments hereto, shall be inadmissible in any proceeding, except as necessary to effectuate or enforce the terms of the Parties' Settlement.

## 4.    BENEFITS OF THE SETTLEMENT FOR PLAINTIFFS

4.1    The Named Plaintiffs and Plaintiffs' Counsel believe that the claims asserted in the Litigation and all other Released Claims have merit and that evidence developed to date supports the claims.  Plaintiffs' Counsel (with the assistance of the Named Plaintiffs) have analyzed and evaluated the merits of the claims made against Defendants in the Litigation, conducted interviews of almost two hundred (200) putative class action members, filed over 360 opt-in forms over the four lawsuits against Defendants on behalf of almost 200 opt-ins, and obtained and reviewed documents relating to Defendants' payroll practices.

4.2    Based on their work and analysis, and their careful evaluation of a number of factors, including: (i) recognizing and acknowledging the expense and length of time needed to prosecute the Litigation through dispositive motions, trial and through appeals; (ii) the uncertain outcome and the risk of any litigation, including the possibility that the Litigation, if not settled now, might not result in any recovery or might result in a recovery less favorable; (iii) the delays inherent in all litigation including that any recovery might not occur for several years; (iv) the risk that this matter might not be certified on a class basis and (v) the representations by Defendants' Counsel that Defendants have made a good faith effort, for purposes of mediating the claims in the Action, to identify all productions regularly filmed or taped on the streets in the New York metropolitan area with PPAs covered by the Complaints in this Action, the Named Plaintiffs and Plaintiffs' Counsel are satisfied that the terms and conditions of this Agreement are fair, reasonable, and adequate and that this Agreement is in the best interests of the Settlement Class Members.

## 5.    COURT PRELIMINARY APPROVAL OF THE SETTLEMENT

5.1    Plaintiffs shall prepare and Defendants' Counsel will file an unopposed motion for an order preliminarily approving the class and collective action Settlement and conditionally certifying a class for settlement purposes only ("the Preliminary Approval Motion").  The Preliminary Approval Motion will be provided to Defendants for review and approval at least twenty (20) days prior to filing with the Court, and Plaintiffs will review and may accept Defendants' proposed changes.  Defendants shall provide proposed changes within fifteen (15) days of receipt.  In connection with the Preliminary Approval Motion, Defendants' Counsel will submit to the Court this Agreement, including all exhibits.  The Parties may agree to expedite this timeline and in so doing a failure to provide said documents for review within the time frames set forth herein shall not constitute a violation or breach of this Agreement.

5.2    In the Preliminary Approval Motion, Class Counsel will inform the Court of the intended process to obtain a "Final Approval Order" and a "Judgment of Dismissal" that will, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Releases, as described herein; (3) appoint the Named Plaintiffs as Class Representatives; (4) appoint Plaintiff's Counsel as Class Counsel; (5) dismiss the Litigation with



prejudice; (6) award Class Counsel fees and costs; and (7) award Service Awards to the Named Plaintiffs, all as more fully set forth herein.

    5.3    The Preliminary Approval Motion also will seek the setting of date(s) for individuals to opt-out, elect to participate, or provide objections to this Agreement, and for a Fairness Hearing before the Court at the earliest practicable date.

    5.5    Provided that the terms of this Agreement are adhered to, and Defendants' reasonable changes are incorporated into the Preliminary Approval Motion, Plaintiffs may file the Preliminary Approval Motion as an unopposed motion.

    5.6    The Parties will work together, diligently and in good faith, to obtain expeditiously a Preliminary Approval Order, Final Approval Order, and Judgment of Dismissal.

    5.7    Defendants may make an application to file the Preliminary Approval Motion (and all related papers) for *in camera* review or as temporarily sealed pending Court preliminary approval and Plaintiffs shall consent to such motion.

## 6.    THE SETTLEMENT CLAIMS ADMINISTRATOR

    6.1    **Retention of the Settlement Claims Administrator.** The Parties have agreed to retain KCC as the Claims Administrator to handle the implementation and administration of this Agreement.

    6.2    **Duties of the Claims Administrator.** The duties of the Claims Administrator will be to, inter alia:

    (a) finalize, mail, and e-mail the Notice to Class Members;

    (b) maintain a static website where the Notice, Claim Form and Release can be downloaded by Class Members and establish a phone number that can receive texts from PPAs to submit their Identification Documents;

    (c) respond to Class Member inquiries, including referring those seeking legal counsel to Class Counsel;

    (d) provide an anonymous identification number to each PPA on the Class List (the ("Anonymous ID"), which shall be utilized consistently on the Class List, on all forms sent to the PPAs, and in all reports provided to Class Counsel pursuant to this Agreement (other than as to individual inquiries as set forth in Section 8.3 or 8.5 in which case a name can be provided), and provide a "key" to Defendants' Counsel listing the Anonymous ID assigned to each PPA on the Class List;

    (e) ascertain current address and addressee information for each Settlement Notice and Claim Form Package returned as undeliverable and conduct a second mailing to the current address, if ascertained;

    (f) report on the status of the Settlement to the Parties;

15



(g) communicate with and advise Class Members of defective or incomplete Claim Forms;

(h) establish and administer the QSF;

(i) calculate Class Members' Settlement Allocations;

(j) provide Counsel for all parties the calculated Class Member's Settlement Allocations using the Anonymous ID for each Class Member to confirm proper application of the Settlement Allocation formula in accordance with the Settlement Agreement (Class Counsel and Defendants' Counsel may ask for the names that correspond with up to 20 identification numbers in order to spot check application of the formula);

(k) distribute settlement payments;

(l) electronically transfer Class Counsel's Fees, Costs and Expenses in accordance with the Settlement Agreement;

(m) calculate and pay the Employer Payroll Taxes;

(n) calculate and withhold Class Members' share of applicable payroll taxes (including, without limitation, federal, state, and local income tax withholding, FICA, Medicare and any state or local employment taxes);

(o) remit such withheld funds to the appropriate tax authorities and provide any related tax reporting;

(p) prepare and file all tax returns necessary for the Settlement and the QSF;

(q) prepare a declaration regarding its due diligence in the claims administration process; and

(r) perform such other duties as the Parties may jointly direct or as are specified herein.

6.3     The Claims Administrator will provide regular reports to the Parties regarding the status of the mailing (including emailing) of the Notices to Class Members, a summary of the number of individuals who have filed Claim Forms, requested to opt-out or submitted objections, a summary of Class Members who submit an incomplete or defective Claim Form with a description of steps taken to notify the claimant to cure the defect; the claims administration process, distribution of the Settlement Checks, and other matters relating to the Settlement.

6.4     All settlement administration amounts, including but not limited to the Claims Administrator's fees and costs, shall be paid by the Defendants in addition to the amount of the Gross Settlement Amount. The Claims Administrator's fees and costs shall not exceed $30,000. Should any act of Plaintiffs (which shall not include individuals opting-out of or objecting to the Settlement) or Class Counsel unreasonably increase the cost of administration over said amount, any overage will come out of the Gross Settlement Amount.



6.5     If the Settlement is not given final approval by the Court and/or the Effective Date does not occur, and the failure to obtain final approval and/or the delay in the Effective Date is caused or occasioned by the unreasonable act of the Plaintiffs (which shall not include individuals opting-out or objecting), or of Class Counsel, the Parties shall bear the settlement administration fees and costs equally and the Plaintiffs shall reimburse the Defendants for one half of any such payment that the Defendants have made.

6.6     The Claims Administrator will promptly provide an IRS Form W-9 to Defendants following its engagement by the Parties.

6.7     The Defendants and Class Counsel agree to reasonably cooperate with the Claims Administrator, provide accurate information within their control necessary to calculate the amounts of the Settlement Checks, provide reasonably available data within their control to assist the Claims Administrator in locating Class Members, and provide other reasonably available information related to the administration of the Settlement. The Parties acknowledge that a significant portion of the data needed may reside with third party payroll companies and will work with each other to obtain and provide such data to the Claims Administrator.

## 7.     CREATION OF THE QUALIFIED SETTLEMENT FUND

7.1     The Parties agree to the creation of a QSF and that the QSF is intended to be a "Qualified Settlement Fund" under Section 468B of the Code and Treas. Reg. §1.468B-1, 26 CFR § 1.468B-1, et seq., and will be administered by the Claims Administrator as such.

7.2     With respect to the QSF, the Claims Administrator shall: (1) calculate, withhold, remit and report each Class Member's share of applicable payroll taxes (including, without limitation, federal, state and local income tax withholding, FICA, Medicare and any state or local employment taxes), and indemnify Defendants for any penalty arising out of any error or incorrect calculation and/or interest with respect to any late deposit of the same; (2) calculate and remit the employee's/Participating Claimant's share of all Employer Payroll Taxes; (3) satisfy all federal, state and local and income and other tax reporting, return and filing requirements with respect to the QSF; and (4) satisfy out of the QSF all taxes (including any estimated taxes, interest or penalties) with respect to the interest or other income earned by the QSF. The fees, expenses and costs incurred in connection with the opening and administration of the QSF and the performance of the Claims Administrator's duties and functions as described in this Agreement will be paid separately as described herein. The aforementioned tax services, Fees, Costs and Expenses shall be treated as and included in the costs of administering the QSF.

7.3     The Parties and the Settlement Claims Administrator shall elect to treat the Settlement Fund as coming into existence as a Qualified Settlement Fund on the earliest date set forth in 26 CFR §1.468B-1(j)(2)(i), and that such election statement shall be attached to the appropriate returns as required by 26 CFR §1.468B-1(j)(2)(ii).

7.4     The Parties agree to cooperate with the Claims Administrator and one another to the extent reasonably necessary to carry out the provisions of this Section. The parties will require the Claims Administrator to indemnify and hold harmless the Parties for and against any claims or liabilities resulting from errors or omissions in its administration of the QSF.

17



## 8.   CLASS NOTICE PROCESS

8.1    The Plaintiffs shall prepare a motion for Preliminary Approval of the Settlement which shall include the Settlement Agreement and all exhibits referenced herein. The Preliminary Approval Motion will move the Court for an Approval Order in the form agreed to by the Parties, which motion will be unopposed by Defendants. Defendants shall file the Preliminary Approval Motion and all related Settlement approval papers with the Court with Defendants' motion for *in camera* review or to temporarily seal those papers. The Parties agree to use all reasonable efforts to secure an appropriate Approval Order from the Court.

8.2    Within twenty (20) days of the Court's issuance of a Preliminary Approval Order, Defendants shall provide the Claims Administrator, in electronic form, with the Class List.  The data provided to the Claims Administrator will also include the employment/payroll data agreed on by the Parties that is needed to calculate each Participating Claimant's Settlement Payment.

8.3    The Class List, the data and information contained in the Class List, and all other data provided by Defendants shall not be disclosed to the Named Plaintiffs, Class Counsel or anyone else external to the Claims Administrator without the written consent of Defendants, provided that the Claims Administrator may share with Class Counsel at its request the number of individuals on the Class List and, with prior written notice to Defendants' Counsel, any and all data from the Class List regarding a Class Member who has inquired about his or her own individual participation in the Settlement in order to enable Class Counsel to respond to such inquiry. The content of the data and the identity of the putative Class Member provided to Class Counsel shall only be shared with Defendants or their counsel if any change is to be made to the Class List or to the Settlement Payment of the individual making the inquiry.  Neither Defendants nor Defendants' Counsel shall seek to contact that putative Class Member in relation to the inquiry or this Agreement.

8.4    Prior to the provision of the Class List, the Claims Administrator shall execute an agreement, in a form acceptable to Defendants, not to use or disclose the information from the Class List and the other data that is provided except as is necessary to perform the services required of the Claims Administrator or to effectuate the terms of this Settlement under this Agreement.

8.5    If an individual claiming to be a putative Class Member contacts Class Counsel, upon request, and with prior written notice to Defendants' Counsel by the Claims Administrator without the individual's name, the Claims Administrator will provide Class Counsel with the necessary contact information or documents about that individual so that Class Counsel may consult with the individual about his or her own individual claim, including whether he or she is a Member of the Class and his/her Settlement Allocations. The content of the data and the identity of the putative Class Member provided to Class Counsel shall only be shared with Defendants or their counsel if any change is to be made to the Class List or to the Settlement Payment of the individual making the inquiry.  Neither Defendants nor Defendants' Counsel shall seek to contact that putative Class Member in relation to the inquiry or this Agreement.



8.6     Within fourteen (14) days following its receipt of the Class List, the Claims Administrator shall calculate the potential Settlement Payments for each Settlement Class Member pursuant to the formula set forth in this Settlement Agreement.

8.7     The Claims Administrator shall provide its calculations to Class Counsel and Counsel for Defendants using the Anonymous IDs in order to allow counsel to confirm the proper application of the Settlement Allocation formula.

8.8     Class Counsel and Defendants' Counsel shall have fourteen (14) days to review, verify and comment on the calculations provided by the Claims Administrator in order to allow counsel to confirm the proper application of the Settlement Allocation formula.  The Claims Administrator shall review any comments received from Counsel and shall finalize the Settlement Payment calculations within three (3) days thereafter and provide the final Settlement Payment calculations to Counsel using the Anonymous IDs.

8.9     For any individual on the Class List the Claims Administrator shall confirm the accuracy of the addresses through the United States Post Office's National Change of Address ("NCOA") database.  If a Notice and Claim Form are returned as undeliverable, the Claims Administrator will perform a standard skip trace in order to attempt to ascertain the current postal mailing address for the Class Member in question, and any address so identified will become part of the Last Known Address.

8.10    Within ten (10) days of finalizing the Settlement Payment calculations, the Claims Administrator will mail to all Class Members for whom a postal mailing address is available via First Class United States Mail, postage prepaid, and email to all Class Members for whom an email is available the Court-approved Notice and Claim Form and a pre-addressed return envelope.  No other materials besides the Notice (including exhibits) and pre-addressed return envelope will be sent in the mailing/emailing.

8.11    The Claims Administrator will take reasonable steps to obtain the correct address of any Class Members for whom a Notice is returned as undeliverable and shall attempt re-mailings as described in this Agreement.  The Claims Administrator will notify Class Counsel and Defendants' Counsel of the number of any Notices sent to Class Members that are returned as undeliverable after the first mailing, as well as the number of any such Notices returned as undeliverable after any subsequent mailing(s) as set forth in this Agreement.

8.12    The Claims Administrator shall keep accurate records of the dates on which it sends Notices and re-Notices to each Class Member.

8.13    During the period beginning on the date the Notice and Claim Forms are mailed and emailed to Class Members, and continuing through the date of the Final Approval Order, the Claims Administrator will maintain a static (non-interactive) website, through which the Notice and Claim Form can be downloaded in PDF which the Class Member can then mail in hard copy, fax or email back to the Claims Administrator.  With the exception of the Notice (including notice of the Settlement in a reminder postcard attached hereto as Exhibit C), no individual will be sent messages or advertisements regarding the website nor will there be a link or option to join the Settlement directly from the website.



8.14   In the event that subsequent to the first mailing of the Notice and prior to the Claim Form Deadline, that Notice is returned to the Claims Administrator by the United States Postal Service with a forwarding address for the recipient, the Claims Administrator shall re-mail the Notice to that address within seven (7) days of receipt of the returned Notice, and the new address shall be deemed the Updated Address for that Class Member.

8.15   In the event that subsequent to the first mailing of the Notice and prior to the Claim Form Deadline, a Notice is returned to the Claims Administrator by the United States Postal Service with no forwarding address, the Claims Administrator shall perform a standard skip trace in an effort to attempt to ascertain the current postal mailing address for the Class Member in question.  If such address is ascertained, the Claims Administrator will re-send the Notice promptly upon receiving such information, and in no event later than five (5) days after receiving the information, and such information will be deemed the Updated Address.  If no Updated Address is obtained for that Class Member, the Class Notice shall be sent again to the Last Known Address.  For an individual notified by email for whom the email address bounces back as undeliverable the Claims Administrator may, if the Parties agree, do a search to find a new email address.

8.16   The Claims Administrator shall not attempt more than two (2) mailings of the Notice to any Class Member unless a Class Member specifically requests, prior to the Claim Form Deadline, that an additional Notice be sent to him or her.

8.17   The Notice shall be deemed mailed and received by the Class Member to whom it was sent three (3) days after mailing and on the same date as to any emailing.

8.18   Claim Forms reflecting opt-ins from FLSA Class Members postmarked on or before the Claim Form Deadline that are received by the Claims Administrator shall be deemed as filed with the Court on the date received by the Claims Administrator and need not be filed with the Court.

8.19   For any deadline under this Agreement that is based on a postmark, in the event that there is no postmark date on the document, it shall be presumed the document was mailed three (3) days prior to the date it was received by the Claims Administrator, excluding any Sunday or other day for which no postal service was provided.

8.20   Twenty days (20) days prior to the Claim Form Deadline, the Claims Administrator shall send postcard and email reminders (in the form agreed to by the Parties) to only those members of the Settlement Class who have not returned a Claim Form Package, which shall inform those members how to obtain a Claim Form Package by contacting the Claims Administrator by telephone, mail, email or via the website.

**9.**     **OPTIONS FOR CLASS MEMBERS.**  Each Class Member may choose to participate in the Settlement without objection, object to the Settlement or opt out of the Settlement.  Each Class Member also may choose to take no action in response to the Notice.

9.1     **Opting out of the Settlement.**  Class Members may opt out of the Settlement and the Litigation by following the procedures set forth below for opting out.

20



9.2     Any Class Member who chooses to opt-out of the Settlement as set forth in this Agreement must mail via First Class United States Mail (postage prepaid) a written, signed statement to Class Counsel and the Claims Administrator that: (i) states he or she is opting out of the Settlement including specifying that it is the Warner Bros./ HBO Settlement; (ii) includes his or her name, address, and telephone numbers; and (iii) unconditionally states an intention to opt-out, such as: "I opt out of the Warner Bros./HBO PPA settlement" ("Opt-out Statement").

9.3     To be effective, an Opt-out Statement must be postmarked within sixty (60) days from the mailing of the Notice to the Class Member ("Opt-out Period"). It is the responsibility of the individual seeking to opt-out to retain a copy of the Opt-out Statement and proof of timely mailing.

9.4     Class Members whose first mailing is returned to the Claims Administrator as undeliverable will be allowed to opt-out or object up to thirty (30) days from the date of the second Notice mailing, up to but no later than fifteen (15) days after the Claim Form Deadline.

9.5     The Claims Administrator will stamp the postmark date on the original of each Opt-out Statement that it receives and shall serve copies of each Opt-out Statement on Class Counsel and Defendants' Counsel not later than three (3) days after receipt thereof. The Claims Administrator will, within twenty-four (24) hours of the end of the Opt-out Period, send a final list of all Opt-out Statements to Class Counsel and Defendants' Counsel by email. The Claims Administrator will retain the stamped originals of all Opt-out Statements and originals of all envelopes accompanying Opt-out Statements in its files until such time as the Claims Administrator is relieved of its duties and responsibilities under this Agreement.

9.6     Any Class Member who does not properly submit an Opt-out Statement pursuant to this Agreement will be bound by the Settlement and the terms of this Agreement as to, and will have released, the Released State Law Claims, as set forth in this Agreement and as approved by the Court.

9.7     The Named Plaintiffs shall not opt-out of the Settlement, and the execution of this Agreement shall signify his/her agreement to all of its terms.

9.8     **Objecting to The Settlement**. Class Members who do not opt-out and who wish to object to the proposed settlement must do so in writing.

9.9     To be considered, a written objection must be mailed to the Claims Administrator via First-Class United States Mail, postage prepaid, and be received by the Claims Administrator no more than thirty (30) days from the mailing of the Notice to the Class Member. The written objection must include words clearly stating an objection to the Settlement, such as "I object to the settlement in the PPA case," as well as all reasons for the objection. Unless permitted by the Court, any reasons not included in the written objection will not be considered by the Court. The written objection must also include the name, address, dates of employment, productions (i.e. film(s) and television program(s) worked on) and telephone number(s) for the Class Member making the objection.

9.10     The Claims Administrator will stamp the date received on the original and send copies of each objection to Class Counsel and Defendants' Counsel by email no later than three



(3) days from receipt. The Claims Administrator shall file the date-stamped originals of any and all objections with the Court with their affidavit of compliance in support of the Final Approval Motion.

9.11    It is the responsibility of any Class Member who files an objection (an "Objector") to retain a copy of the objection and proof of timely mailing.

9.12    A valid Objector also has the right to appear at the Fairness Hearing either in person or through counsel hired by the Objector. An Objector who wishes to appear at the Fairness Hearing must state his or her intention to do so in writing on his or her written objections at the time he or she submits his or her written objections by including the words, "I intend to appear at the Fairness Hearing" in that submission. Unless permitted by the Court, no Class Member may appear at the Fairness Hearing unless he or she has submitted a valid and timely objection that complies with all procedures provided in this Section. Unless permitted by the Court no Class Member may present an objection at the Fairness Hearing based on a reason not stated in his or her written objections. A Class Member who has submitted an Opt-out Statement may not submit objections to the Settlement.

9.13    An Objector may withdraw his or her objection(s) at any time.

9.14    The Parties may file with the Court written responses to any filed objections no later than three (3) days before the Fairness Hearing.

9.15    **Participating in the Settlement.** Class Members who do not opt-out of the settlement pursuant to the terms of this Agreement may elect to receive a Settlement Payment by submitting a timely and valid Claim Form as described in this Agreement.

9.16    Class Members who wish to participate in the Settlement and certify their entitlement to payment under the Settlement must: (1) fully and timely complete and sign the Claim Form, and (2) timely mail, email, or fax (i) the executed Claim Form and (ii) the Identification Document. Claim Forms will be deemed filed with the Court upon receipt by the Claims Administrator.

9.17    If the Claim Form is not postmarked on or before the Claim Form Deadline, then that Class Member will be deemed to have forever waived his or her right to receive payment under this Settlement. However, as long as any Class Member does not properly submit an Opt-out Statement, the Class Member shall be subject to the Judgment of Dismissal and release of Released State Law Claims even if they do not submit a Claim Form. Only Participating Claimants who submit a Claim Form shall be entitled to payment pursuant to this Agreement.

9.18    If a Class Member submits a timely Claim Form, but fails to complete the Claim Form, or fails to submit an Identification Document, then that Class Member shall be notified by the Claims Administrator within two (2) days of receipt of the Claim Form of the nature of the defect and instructions to cure the defect no later than ten (10) days before the Claim Form Deadline. This notification will be sent by U.S. Mail, and, if available, email. The Claims Administrator shall further advise Class Counsel and Defendants' Counsel of the name of the Class Member, along with a copy of the incomplete documents. Class Counsel may assist the



Class Member in completing his or her Claim Form. The Claims Administrator's decision on whether the deficiency has been remedied shall be binding on the Parties and Class Member.

9.19    Any Class Member that fails to cure any defect in their Claim Form documentation no later than ten (10) days before the Claim Form Deadline shall not receive his or her Settlement Check. However, as long as any Class Member does not properly submit an Opt-out Statement, the Class Member shall be subject to the Judgment of Dismissal and release of Released State Law Claims.

9.20    A Class Member who submits an Opt-out Statement and also submits a Claim Form shall be sent a cure letter by the Claims Administrator seeking clarification of whether he or she intends to opt out of the settlement or become a Participating Claimant. Absent a response to the contrary, or if there is no response at all, such Class Member will be deemed to have opted-out of the Settlement and will not receive a Settlement Payment.

9.21    Upon execution of this Agreement, the Named Plaintiffs are not required to submit a Claim Form to be deemed Participating Claimants and will receive a Settlement Check, if the Settlement is approved by the Court.

9.22    **Opting to Do Nothing.** Class Members may choose to do nothing in response to the Notice. Any Class Member who chooses to do nothing and who does not properly submit an Opt-out Statement pursuant to this Agreement will still be bound by the Settlement and the terms of this Agreement as to, and will have released, the Released State Law Claims, as set forth in this Agreement and as approved by the Court. Class Members who do nothing will retain the right to bring any timely FLSA claims.

9.23    Any member of the Settlement Class who fails to timely return a Claim Form Package by the Claim Form Deadline, and who can either (1) demonstrate with copies of military orders that he or she was an active service member overseas during the time period set forth for the return of the Claim Form Package; (2) demonstrate with appropriate documentation that he or she was incapacitated due to his or her own or his or her parent's, child's or spouse's illness during the time period set forth for the return of the Claim Form Package; or (3) demonstrate with appropriate documentation that he or she received the Claim Form Package after the Claim Form Deadline, shall still be eligible to become a Participating Claimant so long as he or she completes and timely returns a Claim Form Package within 15 days after the Claim Form Deadline. Any question about whether a sufficient demonstration has been made by a Class Member shall be decided by the Claims Administrator, whose decision is final.

9.24    Within thirty (30) days after the Claim Form Deadline, after performing any necessary reallocations of Settlement Payment amounts for Participating Claimants as required in Section 11.9(G) ("Unclaimed Funds"), the Claims Administrator shall provide the Final Settlement Amounts by certifying jointly to Class Counsel and Defendants' Counsel (1) a list by Anonymous ID of all members of the Settlement Class who timely send a Claim Form Package; and (2) the total Settlement Payment due to each Participating Claimant. The Claims Administrator shall also provide Defendants' Counsel with the total amount of funds needed to pay the employer's share of any Employer Payroll Taxes, as required by law with respect to Settlement Payments to Participating Claimants so that such amount, as well as the estimated



amount for the services of the Claims Administrator may be added to the QSF. The Claims Administrator will also provide Defendants' Counsel with a breakdown, by amount, of the payments which are made, showing the payments by company and by production.

## 10. FINAL APPROVAL OF SETTLEMENT

10.1    Not later than fifteen (15) days before the Fairness Hearing, Plaintiffs will file with the Court their Motion for Final Approval. The Motion for Final Approval will be provided to Defendants for review and comment at least thirty (30) days prior to filing with the Court; and Plaintiffs will accept Defendants' reasonable comments.

10.2    **Entry of Judgment.** At the Fairness Hearing and through Plaintiffs' Motion for Final Approval, the Parties will request that the Court, among other things: (a) certify a Rule 23 Class for purposes of settlement only; (b) enter Judgment in accordance with this Agreement and the Final Approval Order; (c) approve the Settlement and Agreement as final, fair, reasonable, adequate, and binding such that all Class Members who have not timely opted out have released all Released State Law Claims, and such that all Participating Claimants who submit a Claim Form and/or cash a Settlement Check have released all Released Federal Law Claims; (d) approve Plaintiffs and Class Representatives; (e) approve Plaintiffs' Counsel as Class Counsel; (f) order Defendants to fund the QSF as set forth herein, including any Court-approved amounts; (e) authorize the distribution of applicable amounts to the Named Plaintiffs, Participating Claimants, and the respective individuals and entities involved herein; (f) award attorney's fees and costs to Class Counsel; and (g) dismiss the Litigation with prejudice. A failure of the Court to order one or more of these points, except for points (c) and (g), will not automatically render this Agreement unenforceable or null and void except as set forth in this Agreement. If the Court fails to order any of the above, the Parties agree to meet and confer in an effort to resolve the matter in accordance with the terms of this Agreement. A failure to dismiss the Litigation with prejudice or to not approve the release of all Released State Law Claims and Released Federal Law Claims will render the Agreement null and void.

10.3    **Effect of Revocation or Failure to Grant Preliminary or Final Approval.** If (1) the Court fails to enter Judgment in accordance with this Agreement, or (2) such Judgment does not become Final as defined herein, or (3) the Agreement does not become effective because the Effective Date does not occur, or (4) Defendants revoke the Settlement pursuant to the provisions of this Agreement, then: (i) this Agreement shall have no force or effect, other than this Section, the non-disclosure provisions, and the non-admission provisions; (ii) neither this Agreement, nor any other related papers or orders, nor the negotiations leading to the Settlement, shall be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (iii) the preliminary and conditional certification of the class, if any, shall become null and void, and the fact of certification shall not be cited to, used, or admissible in any judicial, administrative, or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; (iv) none of the Parties will be deemed to have waived any claims, objections, defenses, or arguments with respect to the issue of class or collective action certification or the merits of Plaintiffs' claims or any other issue; (v) none of the information provided by Defendants to Class Counsel for purposes of settlement negotiations or obtained by Class Counsel about Class Members as a result of the Settlement approval process shall be used by Class Counsel in the Litigation; (vi)



both Parties shall be responsible equally for the costs of the Settlement Administrator as defined in Paragraphs 6.4 and 6.5 and (vii) the Litigation will proceed as if no settlement had been attempted. However, before this Agreement can be revoked or terminated, the Parties jointly agree to: (1) seek reconsideration or appellate review of any decision denying entry of Judgment, (2) schedule a mediation session with Mediator Rudy to address any concerns of the Court, and/or (3) attempt to renegotiate the Settlement and seek Court approval of the renegotiated settlement.

10.4    In the event this Agreement does not become Final and the Notice already has been sent to the Class Members, the Claims Administrator, upon the request of the Parties, will provide additional notice to the Class Members in a form jointly agreed upon by the Parties that the Agreement did not receive final approval and that, as a result, no payments will be made to Participating Claimants or Class Members under the Agreement. Such notice shall be mailed by the Claims Administrator via First Class United States Mail, postage prepaid, to the addresses used by the Claims Administrator in mailing the Notice. The costs of such mailing and any additional steps shall be split equally between Plaintiffs and Defendants as limited by paragraphs 6.4 and 6.5.

## 11.    **SETTLEMENT FUND AMOUNTS AND PROCEDURES**

11.1    **Gross/Maximum Settlement Amount.**  Defendants agree to pay a maximum Gross Settlement Amount of Eight Million Dollars ($8,000,000.00) (subject to their right to terminate this Agreement as set forth in Section 17), which shall include Class Counsel's Fees, Costs and Expenses, any and all amounts to be paid to Class Members, any Court-approved Service Awards to the Named Plaintiffs, the employees' share of the Employer Payroll Taxes and the Reserve Fund. The Settlement Claims Administrator's fees and costs shall be paid in addition to this amount subject to the limits set forth in Section 6.4.

11.2    **Employer's Share of Employer Payroll Taxes.**  The employer's share of any payroll taxes on the wage portion of the payments to be made to Participating Claimants shall be paid by the Defendants in addition to the Gross Settlement Amount.

11.3    **Timing of Funding the Settlement Amounts.**  No later than fifteen (15) days after the Effective Date, Defendants shall fund and deposit into the QSF the Gross Settlement Amount as well as funds sufficient to enable the Claims Administrator to pay the Employer's Share of Payroll Taxes, and the Settlement Claims Administrator's fees and costs including those associated with Notice. Any interest accrued from the QSF shall immediately be added to and become part of the Gross Settlement Amount.

11.4    **Uncashed Settlement Checks.**  Settlement Checks not cashed within the Check Cashing Period will be void and a stop-payment directive shall be placed by the Claims Administrator with the applicable bank. The amounts in the QSF attributable to the void and uncashed Settlement Checks will be returned by the Claims Administrator to Defendants. Participating Claimants who do not cash their Settlement Checks shall remain bound by this Settlement and the Releases set forth above. Within 20 days of the end of the Check Cashing Period, the amounts of uncashed Settlement Checks shall be returned by the Claims



Administrator to Defendants to reimburse Defendants for costs and fees expended in accordance with Section 16.

11.5    This Agreement and the Judgment of Dismissal do not and will not create any unpaid residue or unpaid residual with respect to the amounts of uncashed checks, and no distribution of such to any individuals or entities other than Defendants shall be required. The provisions of any unclaimed property statute or law do not apply to this Action or this Agreement.

11.6    **Reserve Fund.** The Settlement Administrator shall set aside Twenty Five Thousand Dollars ($25,000.00) of the QSF as a Reserve Fund (the "Reserve Fund") to resolve any errors or omissions in the Class List and/or for the payment of any Late Claims upon which the Parties have agreed, or that Mediator Rudy or the Court determines, should be paid. "Late Claims" means any Claim Form submitted after the Claim Form Deadline but no more than 60 days after that Deadline. Any individual wishing to collect from the Reserve Fund shall submit a sworn, notarized statement along with a fully executed Claim Form and Identification Document to Class Counsel or the Claims Administrator. Class Counsel or the Claims Administrator shall promptly email all supporting documents from any such individual to Defendants' Counsel and Class Counsel, and in no event later than 75 days after the Settlement Checks are distributed to the Participating Claimants. Fifteen (15) days after such supporting documents are made available to the Parties, the Parties shall endeavor to resolve all errors, omissions, or Late Claims. For those alleging that they should have been included in the Class, and for any other claimed error or dispute, it will be presumed that Defendants' records and/or the records of the post office and/or the Claims Administrator (the "Settlement Records"), are accurate unless the Class Member provides competent evidence otherwise. If the Class Member does not provide documentary evidence that contradicts the Settlement Records, Mediator Rudy (and if Mediator Rudy is not successful the Court) shall decide the dispute following a conference with counsel for the Parties. If the Class Member provides competent evidence contradicting the Settlement Records, the Parties shall confer in good faith and attempt to resolve the dispute. If such dispute regarding participation or Settlement Allocation based on contradictory evidence cannot be resolved, such dispute shall be decided by Mediator Rudy (and if Mediator Rudy is not successful the Court), whose decision will be final and binding. Any payment to be made from the Reserve Fund shall be made within 20 days of the date upon which the Parties agree that a payment is to be made or within 20 days after Mediator Rudy or the Court makes a decision as noted above in this Section. Defendants have no obligation to make any payment if the Reserve Fund is exhausted. One-Hundred-Eighty (180) days after the Check Cashing Period, no further claims shall be accepted for any reason. Any amount remaining in the Reserve Fund 180 days after the end of the Check Cashing Period will be returned to Defendants to reimburse Defendants for costs and fees expended in accordance with Section 16.

11.7 **Settlement Amounts Payable as Attorneys' Fees and Costs.**

(A)    At the Fairness Hearing and Motion for Final Approval, Class Counsel will petition the Court for an award of Class Counsel's Fees, Costs and Expenses in an amount not to exceed one third of the Gross Settlement Amount. After depositing the amount approved by the Court into the QSF, Defendants shall have no additional liability for Class Counsel's Fees, Costs



and Expenses or for any other attorneys' fees, costs or expenses of any named Plaintiff or Class Member for the claims released herein.

(B)     The substance of Class Counsel's application for Class Counsel's Fees, Costs and Expenses is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement of the Litigation. The outcome of any proceeding related to Class Counsel's application for Class Counsel's Fees, Costs and Expenses shall not terminate this Agreement, otherwise affect the Court's ruling on the Motion for Final Approval or extend the deadline for any appeal with respect to any order on the Motion for Final Approval. Class Counsel may appeal the Court's determination with respect to their application for Class Counsel's Fees, Costs and Expenses. Defendants will not object to Class Counsel, in any such appeal, seeking the full amount of Class Counsel's Fees, Costs and Expenses set forth in this Agreement, but reserves the right to make any arguments addressing general points of law or the appropriate standard to be applied. If the Court rules that any amount requested by Class Counsel for Class Counsel's Fees, Costs and Expenses is excessive and reduces the same, only the reduced amount will be deemed to be Class Counsel's Fees, Costs and Expenses for purposes of this Settlement Agreement, and any remaining or reduced amount(s) shall become part of the Gross Settlement Amount and in accordance Section 11.9(G).

(C)     Within ten (10) days of the funding by Defendants of the QSF, the Claims Administrator shall wire Class Counsel's Fees, Costs and Expenses to Class Counsel, provided the Claims Administrator has timely received a completed Form W-9 from Class Counsel.

### 11.8    Service Awards to Named Plaintiffs.

(A)     In return for services rendered to the Class Members, at the Fairness Hearing, Named Plaintiffs may apply to the Court for up to Two Thousand Five Hundred Dollars ($2,500.00) each as a Service Award from the QSF (the "Service Award" or "Service Awards") in recognition of the work and services contributed to the case including but not limited to, investigative work, meetings with Class Counsel, reviewing and providing discovery, assumption of risks, serving as the collective/class representative and participation in mediation and related activities. In addition the two Opt-In Plaintiffs who participated in the mediation may apply to the Court for One Thousand Dollars ($1,000.00) each as a Service Award from the QSF.

(B)     The application for the Service Awards is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the Settlement of the Litigation. The outcome of the Court's ruling on the application for the Service Awards will not terminate this Agreement, otherwise affect the Court's ruling on the Motion for Final Approval or for Final Judgment and Dismissal, or extend the deadline for any appeal with respect to any Order on the Motion for Final Approval. If the Court rules that any amount requested for Service Awards is excessive and reduces the same, the remaining or reduced amount(s) shall become part of the Gross Settlement Amount and in accordance Section 11.9(G).

(C)     Within ten (10) days of the funding by Defendants of the QSF, the Claims Administrator shall mail the Court-approved Service Awards to the Named Plaintiffs or Class Counsel.



11.9    **Net Settlement Fund and Allocation to Participating Claimants.**

(A)         The Settlement Allocation to Participating Claimants for Settlement Checks will be made from the Net Settlement Fund.

(B)    A Participating Claimant who timely and validly submits a completed Claim Form and Identification Document will be issued a Settlement Check by the Claims Administrator from the QSF in accordance with the Final Approval Order.   The Claims Administrator will notify the Parties in writing of the date the Settlement Checks will be sent at least two business days before transmission and update the Settlement Website that Settlement Payments are being distributed.

(C)    Within ten (10) days after Defendants fund the QSF, the Claims Administrator shall mail all Settlement Checks to Participating Claimants at their Last Known Address or the address provided on their Claim Form, along with a notice that they have 180 days to cash the Settlement Checks or their check will become invalid ("Check Cashing Period").

(D)    A Participating Claimant's proportionate share of the Net Settlement Fund will be determined by the Claims Administrator using the spreadsheets containing information on PPA compensation that the Parties have exchanged and pursuant to the following formula (the "Settlement Allocation"), but in no event will any share be less than the Alternative Minimum Settlement Payment.

(1) Net Settlement Fund shall be calculated as follows:

(a)  Maximum Settlement Amount of $8,000,000 less

i. The amount of Class Counsel's Fees, Costs and Expenses (which shall be $2,666,666 if Class Counsel's fee application is granted in full); and

ii. The amount of Service Payments, assuming the Named Plaintiffs' Service Payment applications are granted in full ($32,000); and

iii. The reserve fund ($25,000); and

(2)  Points, for purposes of determining the Settlement Allocation, will be assigned to each Settlement Class Member listed in the Class List based exclusively on the information set forth in the Class List on a per paycheck basis as listed in the spreadsheets (the "Assigned Points").  Each 12-hour period worked shall be considered one shift.  For shifts worked less than 12 hours, a fractional value will be assigned.  As delineated below, points will be assigned in accordance with the shifts worked.  The Parties will provide spreadsheets and formulas to the Claims Administrator which will assign a certain number of points for (a) the number of shifts worked in each week; (b) each paycheck issued between April 9, 2011 and February 27, 2015; (c) each paycheck issued after February 27, 2015; (d) each shift worked in excess of 3.3 shifts worked, in weeks worked before April 9, 2011; and (e) each shift worked in excess of 3.3 shifts worked, in weeks worked after April 9, 2011.

28



(3) The number of each Settlement Class Member's Assigned Points from all paychecks on the Class List spreadsheets shall be totaled.

(4) The total of all Assigned Points will be calculated. The Net Settlement Fund will be divided by the total number of Assigned Points, yielding the "projected point value."

(5) Each Settlement Class Member's total Assigned Points will be multiplied by the projected point value to produce that Settlement Class Member's projected (but also not guaranteed) Settlement Payment.

(6) Each individual's Settlement Payment (including any Alternative Minimum Settlement Payment) shall be reduced by any regular and ordinary payroll and/or income tax deductions that need to be withheld for that Participating Claimant, as described in this Agreement. Participating Claimants shall not be required to pay the Employer's share of any Employer Payroll Taxes out of their allocated amounts.

(E) It is expressly understood and agreed that any amount paid to any Participating Claimant shall not create any credit or otherwise affect the calculation of any benefits provided under any pension, retirement, retirement savings, excess or supplemental retirement or retirement savings, any deferred compensation, bonus, equity, incentive, severance, displacement, supplemental unemployment, health, life, or disability plan, or under any other benefit, pension, or other compensation or benefit plan, policy, program, or arrangement provided by Defendants or any Releasee (collectively, the "Benefit Plans"). Similarly, no payment made pursuant to this Settlement is or will be considered as "Compensation," "Earnings," "Salary," or any similar definition under any Benefit Plans; no payment is or may be considered eligible compensation for Benefit Plans, or for 401(k) Savings and Retirement Plans, or for any other benefit purposes; and no payment will require any contribution or award under any Benefit Plan, or otherwise modify benefits, contributions or coverage under any Benefit Plan.

(F) No Participating Claimant is entitled to be paid twice for the same hours worked on any day or shift. Should it be determined by the Parties that any Participating Claimant has the same hours recorded on the same day or shift for more than one production, the Settlement Allocation formula for determining the Settlement Payment for that Participating Claimant shall be reduced by the number of days/hours attributable to the duplication, and the Settlement Payment amount allocable to the duplicate hours shall remain with Defendants to reimburse Defendants for costs and fees expended in accordance with Section 16. If there is any disagreement between the Parties as to whether there has been a duplication of hours, or as to the amount of the Settlement Payment attributable to any duplicate hours, the disagreement shall be submitted to Mediator Rudy for a final and binding determination.

(G) Unclaimed Funds. Any amounts that are (i) not distributed to the Participating Claimants as Settlement Payments including Claimants' portion of the Employer Payroll Taxes (including because they did not submit a Claim Form and Identification Document to be a Participating Plaintiff); (ii) any portion of the Settlement funding attributable to (a) Class Counsel's Fees, Costs and Expenses, (b) settlement administration fees and costs and/or (c)

29



Service Awards, which is not awarded by the Court; and (iii) any other amount remaining in the QSF after the terms of this Agreement are fully carried out, shall be allocated between the Participating Claimants and Defendants based on the level of overall Settlement participation and the number of Claim Forms received with: (1) a portion being reallocated and distributed to the members of the Settlement Class who become Participating Claimants in the same manner that their Settlement Payments are allocated; and (2) a portion being retained by Defendants to reimburse Defendants for costs and fees expended in accordance with Section 16. The reallocation formula and proportionate shares of the reallocation will be provided by the Parties to and be applied by the Claims Administrator based upon the results of the claims process following the Claim Form Deadline.

(H) <u>Ghost Plaintiffs/PPAs</u>. Should it be determined by the Parties that any individual(s) identified in the data produced by Defendants for the Settlement Class Members is not a real individual (e.g., a false social security number was used to generate payroll checks for non-existent individuals or for individuals who did not actually work on a production), the Settlement Payment amount otherwise allocable to the Ghost Plaintiff shall remain with Defendants to reimburse Defendants for costs and fees expended in accordance with Section 16. If there is any disagreement between the Parties as to whether there is a Ghost Plaintiff or as to the amount of the Settlement Payment attributable to any Ghost Plaintiff, the disagreement shall be submitted to Mediator Rudy for a final and binding determination.

(I) The confidentiality provisions of this Agreement do not apply to discussions by Class Counsel or Defendants' Counsel with the Claims Administrator or counsel in other PPA actions in order to enforce the provisions of Section 11.9 of this Agreement.

11.10   Any fees or costs of Mediator Rudy incurred in having to have him review any matter and/or make any determination will be paid from the Gross Settlement Fund.

## 12.   <u>Tax Characterization of Settlement Payments</u>.

12.1   For purposes of income and payroll taxes, all payments including Settlement Checks to Participating Claimants made pursuant to this Agreement shall be deemed to be paid solely in the year in which such payments actually are received by the recipient.

12.2   For tax purposes, the payments to Named Plaintiffs and Participating Claimants pursuant to Section 11 shall be allocated as follows: wages (50% of each allocated amount), penalties (25% of each allocated amount) and interest (25% of each allocated amount). Named Plaintiffs and Participating Claimants will be exclusively responsible for their own portion of payroll/employment and income taxes on the 50% of each Settlement Payment that is wages, and such amounts will be withheld from Settlement Checks and remitted to the tax authorities. Named Plaintiffs and Participating Claimants also shall each be exclusively liable for any and all additional tax liability for their own portion of taxes, if any.

12.3   Settlement Payments treated as wages pursuant to this Section shall be made net of all applicable employment taxes, including, without limitation, federal, state and local income tax withholding and the employee share of the FICA tax, and shall be reported to the Internal Revenue Service ("IRS") and the payee under the payee's name and social security number on



an IRS Form W-2. Settlement Payments treated as interest and/or penalties pursuant to this Section and Service Awards pursuant to Section 11 shall be made without withholding and shall be reported to the IRS and the payee under the payee's name and social security number on an IRS Form 1099. Payments of attorneys' fees and costs pursuant to Section 11 shall be made without withholding and will be reported to the IRS for the payee and Participating Claimants on IRS Form 1099. Class Counsel shall provide the Claims Administrator with their taxpayer identification numbers within five (5) days of the Preliminary Approval Order.

12.4    The Claims Administrator shall timely arrive at an amount equal to the employer's share of the FICA tax and any federal and state unemployment tax due that are traditionally borne by employers, with respect to the amounts treated as wages pursuant to this Section, shall provide this information to Defendants by no later than thirty (30) days after the Claim Form Deadline, and this amount for taxes shall be paid by Defendants to the Claims Administrator. Defendants shall fund this amount within fifteen (15) days after the Effective Date. The Claims Administrator shall be responsible for making all tax reporting, deposits, and withholdings with respect to all amounts payable to Named Plaintiffs, Participating Claimants and Class Counsel required pursuant to any federal, state, or local tax law or regulation hereunder under the EIN of the QSF or the Defendants as required by applicable law.

12.5    The employee portion of all applicable income and payroll taxes will be the responsibility of the Named Plaintiffs and Participating Claimants. As to the payments reported as non-wage income, the Named Plaintiffs and Participating Claimants each agree to indemnify and hold harmless Defendants for any taxes, penalties, interest or other amounts due or owing by that individual Named Plaintiff or Participating Claimant on such payments.

12.6    Other than as set forth above, the Claims Administrator will not make from the payment to the Named Plaintiffs and Participating Claimants any deductions, withholdings, or additional payments, including without limitation, medical or other insurance payments or premiums, employee 401(k) contributions or matching employer contributions, wage garnishments, or charity withholdings, and entry of the Final Approval Order and Judgment of Dismissal by the Court shall be deemed authority and direction from the Court not to make such deductions, withholdings, or additional payments.

12.7    Named Plaintiffs, on behalf of the Class Members and the Participating Claimants, acknowledge and agree that they have not relied upon any advice from Defendants as to the taxability of the payments received pursuant to this Agreement.

12.8    The Claims Administrator shall handle all tax reporting with respect to the payments made pursuant to this Agreement, and, regardless of any provision in this Agreement, shall report the payments in accordance with applicable law.

## 13.    RELEASES

13.1    **Release of Settlement Class Claims.**  By operation of the entry of the Final Approval Order, and except as to such rights or claims as may be created by this Agreement:

(A)     Each individual Class Member who does not timely and validly opt-out of the Settlement pursuant to this Agreement, including by submitting an Opt-out Statement

31



pursuant to this Agreement, shall be bound by the Settlement and shall be deemed to have, and shall have, forever, finally and fully released the Released State Law Claims, as set forth in this Agreement and as approved by the Court, and regardless of whether such individual files a Claim Form.

(B)     Each individual Class Member who (1) files a valid and timely Claim Form, or (2) cashes a Settlement Check, shall be bound by the Settlement and shall be deemed to have, and shall have, forever, finally  and fully released both the Released State Law Claims and the Released Federal Law Claims.

(C)     If a Class Member submits both an Opt-out Statement and Claim Form, the conflict will be resolved as provided in Section 9.20.

**13.2     Additional Released Named Plaintiffs Claims.**

(A)     In addition to the release of claims applicable to all Participating Claimants as set forth in this Agreement, the Named Plaintiffs agree to a full release of all claims except as set forth herein.  In exchange for that additional release, each Named Plaintiff will receive $2,500 which shall be paid from the money used to reimburse Defendants for costs and fees expended in accordance with Section 16, and if such funds are not sufficient Defendants shall pay the Named Plaintiffs this payment on top of the Gross Settlement Fund.

(B)     In addition to the Released State Law Claims and Released Federal Law Claims, Named Plaintiffs forever and fully release Defendants and the Releasees from any and all claims, actions, causes of action, lawsuits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, claims, charges, complaints and demands whatsoever, whether in law or equity, known or unknown, against the Defendants or Releasees, which the Named Plaintiffs and their heirs, executors, administrators, successors, and assigns, ever had, may now have, or hereafter may determine that they had, including, but not limited to relating to their work on any of Defendants' productions as PPAs, including, but not limited to, claims arising under the Age Discrimination in Employment Act ("ADEA"), Americans With Disabilities Act, the National Labor Relations Act, the Fair Labor Standards Act, the Equal Pay Act, the Employee Retirement Income Security Act of 1974 including but not limited to, breach of fiduciary duty and equitable claims to be brought under §1132(a)(3) ("ERISA"), the Worker Adjustment and Retraining Notification Act, Title VII of the Civil Rights Act of 1964, the Vocational Rehabilitation Act of 1973, the Civil Rights Acts of 1866, 1871 and 1991 including Section 1981 of the Civil Rights Act, the Family and Medical Leave Act, and/or any other federal, state or local human rights, civil rights, wage-hour, pension or labor law, rule, statute, regulation, constitution or ordinance and/or public policy, contract or tort law, or any claim of retaliation under those or any other laws, or any claim of breach of any contract (whether express, oral, written or implied from any source), or any claim of intentional or negligent infliction of emotional distress, tortious interference with contractual relations, wrongful or abusive or constructive discharge, defamation, prima facie tort, fraud, negligence, loss of consortium, malpractice, breach of duty of care, breach of fiduciary duty or any action similar thereto against Defendant or Releasees, including any claim for attorneys' fees, expenses or costs, based on any conduct from the beginning of the world up to and including the date they individually executed this Agreement; provided, however, that



Named Plaintiffs do not waive any right to file an administrative charge with the Equal Employment Opportunity Commission ("EEOC") or similar federal or state fair employment practices agency, subject to the condition that they agree not to seek, or in any way obtain or accept, any monetary award, recovery or settlement therefrom; and further provided, however, that Named Plaintiffs do not release any claim or right (i) for breach of the terms of the Agreement, (ii) for unemployment insurance or workers compensation benefits; (iii) under COBRA; (iv) to vested benefits under the written terms of a qualified employee pension benefit plan; and (v) that may arise after the execution of this Agreement.

(C)      For the Named Plaintiffs, this Settlement is intended to include in its effect all claims identified in this Section, including claims that the Named Plaintiffs do not know or suspect to exist in their favor against Defendants or Releasees at the time of the release.

(D)      Named Plaintiffs shall be deemed to have expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits they may otherwise have had relating to the claims identified in this Section.

(E)      Nothing in this Release shall prohibit or restrict Named Plaintiffs from: (i) providing information to, or otherwise assisting in, an investigation by Congress, the Equal Employment Opportunity Commission, the Securities and Exchange Commission ("SEC") or any other federal regulatory or law enforcement agency in response to any request for information by such agency; (ii) complying with a lawful subpoena or other legal process, subject to the terms of this Agreement; or (iii) engaging in any conduct that is required or protected by law.

(F)      Named Plaintiffs further covenant that they will not participate in any other legal actions against Defendants relating to claims released by this Settlement, and will not opt-in and will withdraw any opt-in if they become aware of such actions. This does not preclude Named Plaintiffs from participating in other "PPA Actions" involving other defendants and other claims not released in this Action.

13.3      By operation of the entry of the Final Approval Order, Defendants and Releasees shall be deemed to have, and shall have, fully, finally, and forever released, relinquished, and discharged Named Plaintiffs and Class Counsel from all claims arising out of, relating to, or in connection with the institution, prosecution, assertion, settlement, or resolution of this Action or the Released Federal Law and State Law Claims.

13.4      Except as provided in this Agreement, Class Counsel and Named Plaintiffs, on behalf of the Class Members individually and collectively, hereby irrevocably and unconditionally release, acquit, and forever discharge any claim that they may have against Defendants for attorneys' fees or costs associated with Class Counsel's representation of the Named Plaintiffs and Class Members in the Litigation and in connection with any claim released herein. Class Counsel further understands and agrees that any fee payments approved by the Court will be the full, final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in the Litigation and in connection with any claim released herein.

33



14.    **NON-ADMISSION OF LIABILITY.**    Nothing relating to this Agreement, or any communications, papers, or orders related to the Settlement, shall be cited to as, construed to be, admissible as, or deemed an admission by Defendants or Releasees, of any liability, culpability, negligence, or wrongdoing toward the Plaintiffs, the Class Members, or any other person, and Defendants and Releasees specifically disclaim any liability, culpability, negligence, or wrongdoing toward the Plaintiffs, the Class Members, or any other person, or that class or collective action certification is appropriate in this or any other matter other than for settlement purposes only.  Each of the Parties has entered into this Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience, expenses, and contingencies. This Agreement, and any communications, papers, or orders related to the Settlement, may not be cited to, used, or admitted as evidence of liability or that class or collective action certification is appropriate.  There has been no determination by any court as to the merits of the claims asserted by Plaintiffs against Defendants or as to whether a class should be certified, other than for settlement purposes only.

15.    **CONFIDENTIALITY**

15.1    Aside from the disclosures in the Notice attached hereto as Exhibit A and in court papers, or as otherwise required by law, as set forth in this Section and in Section 2.2 the Parties agree to maintain the confidentiality of the negotiation (including all drafts) and mediation process that led to this Settlement Agreement, as well as the information and documents exchanged between the Parties and the mediator, during the mediation process, which were exchanged for purposes of settlement and compromise only.  However, the data utilized to develop the Settlement Allocation formula will be provided to the Claims Administrator to enable the Administrator to allocate payments to the Class.

15.2    Named Plaintiffs shall not, directly or indirectly, issue or cause to be issued any statements to the media, issue any press release, hold a press conference, disseminate any information about the Settlement, the Agreement or the Settlement negotiations in any form of media now known or hereafter developed (including but not limited on any website or in any social media post), or otherwise publicize the existence or terms of the Settlement, this Agreement or the negotiations leading up to the Settlement and Agreement.  Notwithstanding the foregoing, to the extent that any Named Plaintiff receives any inquiry about the Settlement or the Settlement Agreement, they shall be permitted to respond by stating that the Parties have reached an agreement that they believe is a fair and reasonable settlement of the disputed claims.  The Named Plaintiffs may also refer the inquirer to Class Counsel or to the contents of documents publicly filed in Court in this Action.

15.3    Class Counsel, the HBO Defendants and Warner Bros. Defendants, and Defendants' Counsel shall not, directly or indirectly, issue or cause to be issued any statements to the media, issue any press release or hold a press conference.  Additionally Class Counsel and Defendants' Counsel shall not, directly or indirectly, disseminate any information about the Settlement, the Agreement or the Settlement negotiations in any form of media now known or hereafter developed (including but not limited on any website or in any social media post), or otherwise publicize the terms of the Settlement, this Agreement or the negotiations leading up to the Settlement and Agreement.  Notwithstanding the foregoing, to the extent that Class Counsel or Defendants' Counsel receive an inquiry about the Settlement Agreement, they shall be

34



permitted to respond by stating that the Parties have reached an agreement that they believe is a fair and reasonable settlement of the disputed claims. Class Counsel and Defendants' Counsel may also direct the inquirer to the documents publicly filed in Court in this Action. Class Counsel may continue to have on their website a reference to this Action and the Settlement, and may post on their website any of the documents publicly filed in Court in this Action and as limited by FRCP 408. Class Counsel may post a link to any article written by a third party (which does not include PPAs) and publicly available on the Internet, as well as a short excerpt from the article (as permissible under the copyright laws).

15.4    All Parties and their Counsel shall not directly or indirectly issue any notice of or communication regarding the Settlement or this Agreement to Class Members (other than Class Counsel's communications with Named Plaintiffs, Class Members who have previously contacted or spoken to Class Counsel, or in response to any inquiry by a Class Member) except for the Notices issued through the Claims Administrator as set forth in this Agreement.

15.5    Any website or social media posting made or established by any Named Plaintiff that in any way references the Litigation will be permanently taken down or modified to remove all references to the Litigation and there will be no other website or social media posting created by any Named Plaintiff regarding the Litigation, this Agreement or the Settlement. Any website made or established by Class Counsel or social media posting will comply with Section 15.3, and any existing website or social media posting of Class Counsel that does not comply with Section 15.3 will be taken down or be modified in order to comply.

15.6    Named Plaintiffs agree not to make disparaging comments about the Defendants.

15.7    After the date of this Agreement but prior to Final Approval by the Court, should there be any inquiry or public statement made that attacks or misrepresents the Parties' Settlement, the Parties agree to confer in good faith to provide an appropriate response. Any such response shall be made for the sole purpose of correcting any inaccuracies regarding the Settlement, the actions of the Parties, or their Counsel. The Parties further agree that after Final Approval by the Court, Class Counsel may respond to any unsolicited public statement or inquiry by a third party by stating that the Parties have reached an agreement that they believe is a fair and reasonable settlement of the disputed claims, and refer the third party to the public court file for additional information. In the event Class Counsel believes a further response is necessary to correct a factual inaccuracy regarding the Settlement that is not readily identifiable by reference to publicly filed court papers, Class Counsel shall confer in good faith with Defendants and the parties shall discuss Class Counsel's proposed statement. If the parties cannot agree, Class Counsel shall refer to the public court file. For purposes of this Section 15.7 an "inquiry" by a current Class Member, or prospective Class Member is not an inquiry covered by the limits in this Section.

15.8 Nothing in this Section 15 is intended to, nor shall it be construed to, violate any ethical obligations of, or interfere with the ability to practice law of, any counsel, including the ability of Class Counsel to provide advice to any current client or future client consistent with the terms of this Agreement.



16. **PROGRAMMATIC RELIEF**

Plaintiffs acknowledge that, following the filing of the Complaints in the Action, one or more of the Defendants took steps to investigate the allegations that were made, and to assess practices with respect to scheduling, payment, and working conditions of PPAs. Plaintiffs further acknowledge that one or more of the Defendants have represented that they have taken or will in the future take steps to ensure that they continue to comply with applicable wage and hour laws, including reviewing the allegations in the Complaints, reviewing current policies and/or practices, providing guidance to individuals involved in the compensation process, and, where deemed appropriate by Defendants, modifying certain practices. Whether or not to make any changes shall be at Defendants' sole and complete discretion, and for the avoidance of doubt, Defendants failure to take any particular step or make any particular change in accordance with this Paragraph 16 shall not give rise to an action for breach of this Agreement, or any other cause of action or claim of any kind in any forum. All steps taken by Defendants in accordance with this Paragraph 16 are explicitly covered by Federal Rules of Evidence 403, 407, and 408, and their equivalent, and no such steps are intended to be or shall be construed as an admission that any previous practice violated any law. Plaintiffs acknowledge that Defendants have and will continue to incur significant costs to take the steps outlined in this Paragraph 16, and that it is in Plaintiffs' interest to ensure that Defendants take such steps.

17. **TERMINATION OF AGREEMENT AND ITS EFFECTS**

17.1 **Defendants' Right to Terminate.** Except as set forth in 17.1 (A) & (D) below, Defendants may terminate this Agreement at any time prior to five (5) days before the filing of Plaintiffs' Motion for Final Approval in the event that any of the following conditions occur:

(A) More than five (5%) of all Class Members timely and properly opt out of the Settlement by submitting timely and valid Opt-out Statements pursuant to Sections 9.2 and 9.3, and Defendants' Counsel delivers written notice to Class Counsel via email or overnight mail of its intent to revoke this Agreement within twenty (20) days after the end of the Opt-out Period;

(B) The Agreement is construed or applied by the Court in such a fashion that would require Defendants to pay more than the amounts provided for in this Agreement;

(C) The Court does not certify, for settlement purposes only, an opt-out class action consistent with this Agreement; or

(D) Less than 10% of all Class Members become Participating Claimants and Defendants' Counsel delivers written notice to Class Counsel via email or overnight mail of its intent to revoke this Agreement within twenty (20) days after the end of the Opt-out Period.

17.2 If Defendants indicate their intent to terminate under this provision, Plaintiffs are entitled to a mediation session with Mediator Mark Rudy at equal cost to the Parties, or alternatively, if Defendants indicate their intent to terminate this Agreement under Section 17.1(B), Plaintiffs may pro-rata reduce the per PPA settlement payments, and/or the costs, fees



and expenses of the Settlement to bring the total amount to be paid by Defendants back to the amounts provided for in this Agreement, and in that event Defendants cannot terminate the Agreement. If Defendants choose to terminate upon less than 10% of Class Members becoming Participating Claimants, the Parties will discuss the possibility of sending out additional types of Notice or publication to increase the participation rate.

## 18.    INTERPRETATION AND ENFORCEMENT OF THE AGREEMENT

18.1    **Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

18.2    **Non-Interference With Settlement.** Pending the Court's decision on final approval of the Settlement and entry of the Court's Final Approval Order, Plaintiffs and all Class Members and anyone acting on behalf of Plaintiffs or any Class Member shall be barred and enjoined from: (a) further litigation in this Litigation as to the Defendants participating in this Settlement; (b) filing, or taking any action directly or indirectly, to commence, prosecute, pursue or participate, individually or on a class or collective action basis, in any action, claim or proceeding against Defendants in any forum in which any of the claims released by this Agreement are asserted, or which in any way would prevent any such claims from being extinguished; or (c) seeking, whether on a conditional basis or not, certification of a class or collective action that involves any such claims.

18.3    **No Assignment.** Class Counsel and Named Plaintiffs, on behalf of themselves and the individual Class Members, represent and warrant that they have not assigned or transferred, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

18.4    **Entire Agreement.** This Agreement and its exhibits constitute the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties about that subject matter shall be deemed merged into this Agreement.

18.5    **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to the Named Plaintiffs, their, representatives, heirs, administrators, executors, beneficiaries, conservators, and assigns. The confidentiality provisions listed in Section 15 and attorneys' fees provisions shall be binding upon Counsel for the parties.

18.6    **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

37



18.7 **Captions**. The captions or headings of the Sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

18.8 **Construction**. The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

18.9 **Governing Law**. This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

18.10 **Continuing Jurisdiction**. The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the Settlement contemplated thereby.

18.11 **Waivers, etc. Must Be in Writing**. No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by all of the Parties and their counsel and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

18.12 **Severability**. Other than the exceptions contained in this Section, if any provision of this Agreement is found to be illegal, invalid, inoperative or unenforceable in law or equity, such finding shall not affect the validity of any other part of this Agreement, which shall be construed, reformed, and enforced to affect the purposes thereof to the fullest extent permitted by law. If any part, term or provision of Section 11 (regarding the settlement amounts), Sections 1.35 and 13 (regarding the Released Claims and Releasees), Section 17 (regarding Termination and its effects), or Section 15 (regarding Confidentiality and Non-Publication of Settlement), is declared or determined to be illegal, invalid, or unenforceable in whole or in part, either Party has the right to schedule a mediation session with Mediator Rudy (at the requesting Party's or Parties' cost) that will be attended by both Parties to try to modify or amend the Agreement in a manner acceptable to both Parties and the Court. In the event that such a session is unsuccessful, either Party shall have the right, in their sole discretion, and within fifteen (15) days following the last requested mediation session, to terminate this Agreement. In the event Defendants opt to terminate this Agreement, Defendants shall have no obligation to pay or provide the amounts described in Section 11. If the Agreement is terminated pursuant to this Section, the Parties shall bear all settlement administration expenses, including all fees and costs of the Claims Administrator, equally.



18.13  **CAFA Notice**.  Defendant shall timely provide notice if and as required by the Class Action Fairness Act ("CAFA") and provide copies of such to Class Counsel.  The CAFA Notices may be modified by Defendants as circumstances warrant.  Defendants' failure to abide by any and all applicable CAFA procedures, including but not limited to the notification time limits set forth in CAFA and any failure to send a notice, shall not delay the Settlement and payment timetable herein.

18.14  **Counterparts**.  The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

18.15  **Facsimile and Scanned Signatures**.  Each Party, including all Named Plaintiffs identified below, will sign three originals of this Agreement so that HBO, Warner Bros. and Class Counsel will each have a full set of original signatures.  For all other purposes any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**WE AGREE TO THESE TERMS,**

DATED: 1/19 , 2017

Home Box Office, Inc.

By: _____

Its: *S VP + Chief Counsel, Litigation*

39

DATED: _____, 2016    **Warner Bros. Television, a division of WB Studio Enterprises Inc.**

By: _____

Its:   SVP, GENERAL COUNSEL

DATED: _____, 2016    **Warner Bros. Pictures, a division of WB Studio Enterprises Inc.**

By: _____

Its: _____

DATED: _____, 2016    **Bonanza Productions Inc.**

By: _____

Its:   VP

DATED: _____, 2016    **New Line Productions, Inc.**

By: _____

Its: _____

DATED: _____, 2016    **Chime Productions, LLC**

By: _____

Its: _____

DATED: _____, 2016    **Kiki Tree Pictures Inc.**

By: _____

Its: _____

DATED: _____, 2016    **Warner Bros. Entertainment Inc.**

By: _____

Its: _____

- 40-

DATED: _____, 2016    **Warner Bros. Television, a division of WB Studio Enterprises Inc.**

By: _____

Its: _____

DATED: _____, 2016    **Warner Bros. Pictures, a division of WB Studio Enterprises Inc.**

By: _____

Its:    Senior Vice President

DATED: _____, 2016    **Bonanza Productions Inc.**

By: _____

Its: _____

DATED: _____, 2016    **New Line Productions, Inc.**

By: _____

Its: _____

DATED: _____, 2016    **Ghime Productions, LLC**

By: _____

Its:    AUTHORIZED REPRESENTATIVE

DATED: _____, 2016    **Kiki Tree Pictures Inc.**

By: _____

Its:    **Vice President**

DATED: _____, 2016    **Warner Bros. Entertainment Inc.**

By: _____

Its: _____

DATED: _____, 2016    **Warner Bros. Television, a division of WB Studio Enterprises Inc.**

By: _____

Its: _____

DATED: _____, 2016    **Warner Bros. Pictures, a division of WB Studio Enterprises Inc.**

By: _____

Its: _____

DATED: _____, 2016    **Bonanza Productions Inc.**

By: _____

Its: _____

DATED: _____, 2016    **New Line Productions, Inc.**

By: _____

Its: _____Robyn Martin_____

Senior Vice President

DATED: _____, 2016    **Chime Productions, LLC**

By: _____

Its: _____

DATED: _____, 2016    **Kiki Tree Pictures Inc.**

By: _____

Its: _____

DATED: _____, 2016    **Warner Bros. Entertainment Inc.**

By: _____

Its: _____

DATED: _____, 2016     **Warner Bros. Television, a division of WB Studio Enterprises Inc.**

By: _____

Its: _____

DATED: _____, 2016     **Warner Bros. Pictures, a division of WB Studio Enterprises Inc.**

By: _____

Its: _____

DATED: _____, 2016     **Bonanza Productions Inc.**

By: _____

Its: _____

DATED: _____, 2016     **New Line Productions, Inc.**

By: _____

Its: _____

DATED: _____, 2016     **Chime Productions, LLC**

By: _____

Its: _____

DATED: _____, 2016     **Kiki Tree Pictures Inc.**

By: _____

Its: _____

DATED: __/__, 2016     **Warner Bros. Entertainment Inc.**

By: _____

Its: _____

DATED: December 22, 2016
           **Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the NBC and Fox Actions**

_Corey Leach_
_____
Corey Leach

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the NBC and Fox Actions**

_____
Anthony Jacob

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the NBC Action**

_____
Priamo Fermin

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the NBC Action**

_____
Neftali Pellot

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the NBC Action**

_____
Gary Phifer

DATED: 12/22, 2016 Named Plaintiff, individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the NBC and Fox Actions

_____

Corey Leach

Named Plaintiff, individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the NBC and Fox Actions

_____

Anthony Jacob

Named Plaintiff, individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the NBC Action

_____

Prismo Fermin

Named Plaintiff, individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the NBC Action

_____

Neftali Pelkai

Named Plaintiff, individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the NBC Action

_____

Gary Phifer

DATED: ___/ / /___, 2016

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the NBC and Fox Actions**

_____
Corey Leach

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the NBC and Fox Actions**

_____
Anthony Jacob

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the NBC Action**

_____
Priamo Fermin

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the NBC Action**

_____
Neftali Pellot

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the NBC Action**

_____
Gary Phifer

DATED: _____, 2016    **Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the NBC and Fox Actions**

_____
Corey Leach

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the NBC and Fox Actions**

_____
Anthony Jacob

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the NBC Action**

*Neftali Pellot*                 1-4-17
_____
Neftali Pellot

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the NBC Action**

_____
Gary Phifer

DATED: Dec 28 2016

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the NBC and Fox Actions**

_____

Corey Leach

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the NBC and Fox Actions**

_____

Anthony Jacob

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the NBC Action**

_____

Priamo Fermin

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the NBC Action**

_____

Neftali Pellot

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the NBC Action**

_____

Gary Phifer

Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the Fox Action

_____

Robert Tracey


Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the HBO Action

_____

Priamo Fermin


Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the HBO Action

_____

Christian Pellot

Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the Warner Bros. Pictures Action

_____

Garnett Morgan


Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the Warner Bros. Pictures Action

_____

Jonathan Tucker


Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the Warner Bros. Pictures Action

_____

Carol Forrest

- 2-

Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the Fox Action

_____
Robert Tracey


Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the HBO Action

*Priamo Fermin* (signature)
_____
Priamo Fermin


Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the HBO Action


_____
Christian Pellot

Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the Warner Bros. Pictures Action


_____
Garnett Morgan

Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the Warner Bros. Pictures Action


_____
Jonathan Tucker

Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the Warner Bros. Pictures Action


_____
Carol Forrest

-2-

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the Fox Action**

_____

Robert Tracey

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the HBO Action**

_____

Priamo Fermin

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the HBO Action**

_____

Christian Pellot

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the Warner Bros. Pictures Action**

_____

Garnett Morgan

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the Warner Bros. Pictures Action**

_____

Jonathan Tucker

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the Warner Bros. Pictures Action**

_____

Carol Forrest

Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the Fox Action

_____

Robert Tracey

Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the HBO Action

_____

Priamo Fermin

Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the HBO Action

_____

Christian Pellot
Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the Warner Bros. Pictures Action

_____

Garnett Morgan

Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the Warner Bros. Pictures Action

_____

Jonathan Tucker

Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the Warner Bros. Pictures Action

_____

Carol Forrest

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the HBO Action**

_____

Priamo Fermin

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the HBO Action**

_____

Christian Pellot

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the Warner Bros. Pictures Action**

_____

Garnett Morgan

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the Warner Bros. Pictures Action**

_____

Jonathan Tucker

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the Warner Bros. Pictures Action**

_____

Carol Forrest

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the Warner Bros. Pictures Action**

_____

Ferdie Headlam

**Named Plaintiff, Individually and on behalf of all Participating Claimants against the Warner Bros. and HBO Defendants in the Warner Bros. Pictures Action**

_____

Ali Muhammed

CLASS COUNSEL as to
Confidentiality and Attorneys'
Fee Provisions:

DATED: 12-23 , 2016          Valli Kane & Vagnini LLP

By: _____

DEFENDANTS' COUNSEL as
to Confidentiality and Attorneys'
Fee Provisions:

DATED: _____, 2016          **Morgan, Lewis & Bockius LLP**

By: _____

DB1/ 90155770.1

- 3 -

Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the Warner Bros. Pictures Action

_____

Ferdie Headlam

**Named Plaintiff, Individually and on behalf of all
Participating Claimants against the Warner Bros. and
HBO Defendants in the Warner Bros. Pictures Action**

_____

Ali Muhammed

CLASS COUNSEL as to
Confidentiality and Attorneys'
Fee Provisions:

DATED: _____, 2017     **Valli Kane & Vagnini LLP**

By: _____

DEFENDANTS' COUNSEL as
to Confidentiality and Attorneys'
Fee Provisions:

DATED: 1/20, 2017     Morgan, Lewis & Bockius LLP

By: _____

Christopher A. Parlo

43